'8

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 1 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| *JOSE IGNACIO MONTERRUBIO* | § | |
| Petitioner, | § | |
| | § | |
| *v.* | § | MISC. NO. B-00-018 ~~B-00-018~~ B-0 1-112 |
| | § | |
| *JANIE COCKRELL, DIRECTOR,* | § | |
| *TEXAS DEPARTMENT OF CRIMINAL* | § | |
| *JUSTICE, INSTITUTIONAL DIVISION,*[1] | § | |
| Respondent. | § | |

## RESPONDENT COCKRELL'S ORIGINAL ANSWER AND
## MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Janie Cockrell, Director, Texas Department of Criminal Justice, Institutional Division, hereinafter "the Director," by and through her attorney, the Attorney General of Texas, and files this his **Original Answer and Motion for Summary Judgment with Brief in Support**. In support thereof, the Director would show the Court the following:

### I.

### PRELIMINARY STATEMENT

Jose Ignacio Monterrubio ("Monterrubio"), a Texas death row inmate, presents in his petition for writ of habeas corpus, filed pursuant to 28 U.S.C. §§ 2241 and 2254 (West 2001), four claims challenging the validity of his presumptively valid state capital murder conviction and sentence of death. Inititally, Monterrubio's first three claims should be dismissed because they are unexhausted and procedurally barred. In the alternatively, these

---

[1] The previous named respondent in this action was Gary L. Johnson. On August 1, 2001, Janie Cockrell succeeded Johnson as Director of the Texas Department of Criminal Justice, Institutional Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

CutPDF - www.fmto.com

claims, as well as his fourth claim, lack merit. Thus, federal habeas relief should be denied.

## II.

## DENIAL

The Director denies each and every allegation of fact made by petitioner, ("Monterrubio"), except those supported by the record and those specifically admitted herein.

## III.

## STATEMENT OF THE CASE

*A.*     ***Course of proceedings and disposition below.***

   **1.     Trial and direct appeal.**

A grand jury indicted Monterrubio on December 8, 1993, in the 107th Judicial District Court of Cameron County, Texas, for the capital offense of murdering Carla Villarreal while in the course of committing and attempting to commit aggravated sexual assault.  Tr 13.[2] Monterrubio pleaded not guilty and, after a jury trial, was convicted of capital murder as charged in the indictment on October 25, 1993.  Tr 344.  That same day, following a separate punishment hearing, the jury answered affirmatively the first and second special sentencing issues, and answered negatively the third special issue, submitted pursuant to Article 37.071 of the Texas Code of Criminal Procedure.  TR 347-352.  In accordance with state law, the trial court assessed Monterrubio's punishment at death.  Tr 353-57.

Monterrubio's conviction and sentence were automatically appealed to the Texas Court of Criminal Appeals, which affirmed in an unpublished opinion on September 11, 1996. *Monterrubio v. State*, No. 72, 028, slip.op.(Tex Crim.App.1996).  Monterrubio did

---

[2]     "Tr" refers to the transcript of pleading and documents filed with the court during the trial, followed by page numbers.

CIXPDF - www.fxx/xx.com

not petition the Supreme Court for a writ of certiorari.

### 2.   State and federal habeas proceedings.

Monterrubio filed and application for writ of habeas corpus in the trial court on April 27, 1997. SHTr 1.[3] The trial court subsequently found that the habeas application presented no issues of fact or questions of law to be resolved, and recommended that Monterrubio's application be denied. SuppSHTr 41-43. The Court of Criminal Appeal then denied Monterrubio's application with written order on March 8, 2000. *Ex Parte Monterrubio*, No. 44,170-01 (Tex.Crim.App. 2000); SHTr at cover and Order.

Monterrubio filed a skeletal petition for writ of habeas corpus in this Court on June 1, 2001. He later filed an amended petition on July 3, 2001.

### B.   *Statement of Facts.*

### 1.   Guilt-innocence phase.

On September 5, 1993, Carla's Villarreal's mother and step-father discovered that she was missing. 16 SR 160. Carla had returned home the prior evening around 10:00p.m. after attending a neighborhood party with her friend Yvette Urie, but was not in her room the following morning. 16 SR 52, 158 The door to Carla's bedroom was locked from the inside and it did not appear that she had slept in her bed. 16 SR 160. Alarmed, Carla's parents telephoned and visited several of Carla's friends in attempt to discover her whereabouts. 16 SR 53, 161. When their efforts proved futile, they reported Carla's disappearance to the Brownsville police. 16 SR 162.

---

[3]      "SHTr" refers to the state habeas transcript - the transcript of pleading and documents filed with the court during state habeas corpus proceedings - followed by page numbers. "SuppSHTr" refers to the supplemental state habeas transcript, followed by page numbers.

During their initial investigation, police learned that Carla had told several people that she was planning on sneaking out of the house later that evening to meet up with Sixto Monterrubio, ("Sixto"). 16 SR 54, 186. When questioned on September 9, Sixto told police that he was in Matamoros attending a wedding reception on the night that Carla disappeared. 16 SR 183. He further stated that he had not seen Carla that night, but had only spoken with her over the telephone. 16 SR 183. After further investigation, the police decided to bring Sixto back down to the station on September 30 for more questioning regarding the nature of his relationship with Carla. 16 SR 189. Sixto admitted that Carla had previously snuck out of her house to meet up with him and go to the beach. 16 SR 189.

The next day, the police received a telephone call from Sixto, telling them that Carla had left a letter on the windshield of his mother's car. 16 SR 192-92. After retrieving the letter, the police went to Carla's parents in order to obtain a known writing sample of Carla's handwriting. 16 SR 193. The police found that the two writing samples were not even remotely similar. 16 SR 194. A few days later, on October 4, Carla's step-father called police to tell them that they had also received a letter purportedly written by Carla. 16 SR 195, 19 SR 587. It was ultimately determined that the letters had been written by Sixto.

Meanwhile, the police had also determined that Sixto's alibi was false. 16 SR 201. When confronted by police with this information, Sixto asserted that he had actually been with his cousin, Monterrubio, on the night in question. 16 SR 204. Police then brought Monterrubio to the station to confirm the veracity of Sixto's latest alibi. 16 SR 205. After giving an initial statement to police conflicting with Sixto's account of that evening, Monterrubio confessed that he and Sixto had sexually assaulted and murdered Carla Villarreal. 16 SR 205-206, 17 SR 452-53.

4

The Court of Criminal Appeals summarized the facts surrounding Carla Villarreal's murder as follows:

> According to the record, [Carla], a minor, was a "friend" of [Monterrubio's] cousin, Sixto, and was accustomed to sneaking out of her parent's home in their company. According to [Monterrubio's] confession, he and Sixto had to some degree premeditated and planned the crime. As the three rode in Sixto's car in the late hours of the night of the offense, Sixto and [Monterrubio] attached the victim, beating her about the head with a crow-bar. [Monterrubio] confessed the [*sic*] he struck the victim with the crow-bar and threatened to hit her again if she did not submit to him and Sixto. Under these threats she submitted. She was stripped and her hands tied with a leather shoelace from [Monterrubio's] boot. [Monterrubio] and Sixto then proceeded to anally, vaginally, and orally sexually assault her throughout the night, driving from one location to another so as to avoid being detected. [Monterrubio] recounted in his confession that at one point the victim managed to escape from Sixto's car, was quickly apprehended, beaten into submission and dragged back to the car begging for her life. [Monterrubio] also recounted that as he raped her, the victim begged for her life, promising that since she was their friend, she would not tell anyone about the incident. [Monterrubio] described how he turned up the car radio so the victim's pleas for help could not be heard.
>
> As morning approached, Sixto and [Monterrubio] drove the victim, as she begged for her life, to a secluded place. [Monterrubio] asserts that he attempted to choked [*sic*] her with a towel, but was unable to kill her. They drove to another location, where Sixto unsuccessfully attempted to choke the victim to death. [Monterrubio] then stabbed the victim's neck with a pocket knife. As she began to choke on her own blood, [Monterrubio] and Sixto took turns, trying unsuccessfully to break her neck. Unable to break her neck, they began to beat her. [Monterrubio] beat her head with a stick, breaking her jaw. [Monterrubio] then retrieved a can of tire-foam from the car for Sixto to spray the foam into the victim's nose and mouth. Still the victim clung to life. Exasperated, Sixto and [Monterrubio] drove the victim to yet another location. There [Monterrubio] took his shirt off, wrapped it around the victim's face and smothered her until she died, ten to twenty minutes later. [Monterrubio] and Sixto moved the victim's body several times before they led police to the decomposed remains.

*Monterrubio v. State*, slip op. at 4-5.

5

CMPDF - www.festo.com

## 2.   Punishment Phase

<u>State's Evidence</u>

The State's only evidence on punishment was the victim impact testimony of Carla Villarreal's mother and sister.  20 SR 3-10.  They both spoke briefly regarding the effect Carla's death had on their family.  20 SR 3-10.

<u>Defense Evidence</u>

The defense introduced testimony from several witnesses, including Monterrubio's mother and grandmother, regarding his general good nature and benevolent character. Josefina Lopez, Monterrubio's grandmother, testified that he was a good and obedient child. She and Rosa Monterrubio, Monterrubio's mother, both indicated that after committing the murders, he stopped eating and going to school and appeared very sad.  20 SR 12, 17. Gloria De la Garza and her daughter, acquaintances of Monterrubio's, both testified that he was disciplined and respectful.  20 SR 23-24, 27.

# IV.

# STATE COURT RECORDS

Copies of Monterrubio's state trial, direct appeal, and state habeas corpus record were forwarded to this Court on June 25, 2001.

# V.

# PETITIONER'S ALLEGATIONS

The Director understands Monterrubio to raise the following grounds for federal habeas relief:

1.   That appellate counsel rendered ineffective assistance in violation of Monterrubio's federal constitutional right to effective assistance of counsel under the Sixth Amendment;

6

a.  by failing to raise as error on appeal the fact that Monterrubio's Sixth Amendment right to confront and cross-examine witnesses against him was violated by the introduction of Sixto's confession into evidence during Monterrubio's trial;

b.  by failing to raise as error on appeal the fact that the trial court erred in admitting the inadmissible hearsay testimony of Delaila Zarate;

2.  That trial counsel rendered ineffective assistance of counsel in violation of Monterrubio's federal constitutional right to effective assistance of counsel under the Sixth Amendment;

a.  by failing to request a special venire under Texas Code of Criminal Procedure article 34.01;

b.  by failing to challenge juror Laura Becerra for cause;

c.  by failing to conduct adequate voir dire of prospective jurors;

d.  by failing to object to hearsay testimony offered by witnesses Yvette Urie, Gilbert Acala, Delaila Zarate, Julie Ramirez, and Jorge Homero Hinojosa; and

e.  by failing to offer adequate evidence of mitigation during the punishment phase;

3.  That Monterrubio's confession was obtained in violation of his federal constitutional right against self incrimination under the Fifth Amendment;

4.  That the evidence offered during the punishment phase was insufficient to support the jury's affirmative finding of future dangerousness.

## VI.

## EXHAUSTION

It is well settled that a state petitioner's application for federal habeas relief shall not be granted unless the applicant has fully exhausted the available state court remedies.  28 U.S.C. § 2254(b)(1)(1996).  A petitioner must, therefore, present his claims to the highest

CStdPDF - www.fastio.com

court of the state for review, before a federal court will entertain the alleged errors. *Richardson v. Procunier*, 762 F.2d 429 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The purpose of this requirement is not to create a procedural hurdle for petitioner's seeking habeas relief in federal court. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10, 112 S.Ct. 1715, 1720 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78, 92 S.Ct. 509, 512-513 (1971). Rather, exhaustion was designed to further the policy of comity between the federal and state governments that has been consistently adhered to by both the United States Supreme Court and the Fifth Circuit. *Keeney*, 504 U.S. at 8-10, 112 S.Ct. at 1719-20; *Dowthitt v. Johnson*, 230 f3d 733, 745-46 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1250 (2001).

Accordingly, exhaustion requires that all claims be "fairly presented" to the state court in order the give the State the first opportunity to pass upon and correct alleged violations of the prisoner's federal rights. *Picard*, 404 U.S. at 275, 92 S.Ct. at 512; *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995). That is, a petitioner must provide the highest state court with a fair opportunity to apply the controlling federal constitutional principles to the same factual allegations. *Duncan*, 513 U.S. at 365-66, 513 U.S. at 888; *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205 (1982); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 278, 277 (1982), *Picard*, 404 U.S. at 275, 92 S.Ct. at 512; *Procunier*, 762 F.2d at 431. This prevents any "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." *See Picard*, 404 U.S. at 275, 92 S.Ct. at 512.

Of the four claims asserted by Monterrubio in his federal petition for habeas corpus relief, only one is properly exhausted. His fourth claim regarding the sufficiency of the evidence offered to support the jury's affirmative finding on future dangerousness was

8

"fairly presented" to the Texas Court of Criminal Appeals for consideration on direct appeal. It is, therefore, exhausted and properly before this Court for federal habeas review.

However, Monterrubio has failed to satisfy the exhaustion requirement with regard to this three remaining claims. Monterrubio's first claim, where he asserts that appellate counsel was ineffective for failing to raise certain issue on appeal, was never presented the state court for review on direct appeal or in a state application for writ of habeas corpus. Consequently, he has not exhausted the available state remedies for this claim.

Monterrubio's second claim, in which he maintains that he was deprived of his Sixth Amendment right to effective assistance of trial counsel, was raised in his state application for writ of habeas corpus, but only in vague, conclusory form. There he asserted that,

> [t]he applicant was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Section 10 of the Texas Constitution, in that he was denied the ineffective assistance of counsel during both the guilt and punishment phases of trial,

but offered no argument or authority to support this claim. He further failed to identify specific allegations of how trial counsel was ineffective. *See* SHTr 10.

Exhaustion cannot be satisfied by the simple statement of a federal claim in state court. *Keeney*, 504 U.S. at 10, 112 S.Ct. at 1720. In holding that this requirement warrants more than mere notice, the Supreme Court reasoned that, "[j]ust as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the state a full and fair opportunity to address and resolve the claim on the merits." *Id*. Thus, that Monterrubio previously asserted this claim in his state writ is not sufficient to exhaust where he did not provide the court with specific allegations and argument so as to allow the court the opportunity to address the claim on the merits. Given the conclusory nature of the claim as it was asserted in his state writ, it was impossible for the Court of Criminal Appeals to

9

reach the merits on the issue of trial counsel's effectiveness. *See* SuppSHTr 41-42. Monterrubio has not, therefore, properly exhausted this claim.

Circuit precedent further dictates that the mere similarity between a federal and state claim is insufficient to exhaust. *See Picard*, 404 U.S. at 276, 92, S.Ct. at 512-13; *Duncan*, 513 U.S. at 366, 115 S.Ct. at 888. The Fifth Circuit has state that, "it is not enough that all the facts necessary to support the federal claim were before the state courts." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). The court must be alerted to the fact that the petitioner is asserting a claim under the United States Constitution. *Duncan*, 513 U.S. at 365-66, 115 S.Ct. at 888; *Picard*, 404 U.S. at 276-77, 92 S.Ct. at 513. Further, exhaustion is not achieved where petitioner "advance[s] in federal court an argument based on a legal theory district from that relied upon in the state court." *Nobles*, 127 F.3d at 422.

Monterrubio has, therefore, failed to properly exhaust the available state remedies with regard to his third claim, in which he asserts that the State infringed upon his Fifth Amendment right against self-incrimination by denying his request for an attorney. Although he presented a similar issue to the Court of Crimial Appeals on direct review, he did not do so in a manner that allowed the state court to fairly address the issue raised here in his federal petition. There, Monterrubio urged that the trial court erroneously admitted his confession into evidence because it was obtained in violation of his request for an attorney. *Monterrubio*, Slip Op. No. 72,028 at 4. The Texas court held that it could not address the appellant's claim because he failed to identify the specific legal theory under which he raised his contention. *Id.* at 5. The state court was not, therefore, given a fair opportunity to address the issue now asserted in Monterrubio's federal petition, and this claim is not exhausted.

In addition to being unexhausted, Monterrubio's claims are also procedurally barred in federal court. A procedural default occurs where the petitioner fails to exhaust available state remedies, and the court to which petitioner would be required to present those claims for exhaustion would now find the claim procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2456, 2557 n.1 (1991); *Nobles*, 127 F.3d at 420. Thus, because Texas' abuse of writ doctrine, codified in article 11.071 § 5 of the Texas Code of Criminal Procedure, would prohibit a successive writ application asserting Monterrubio's unexhausted claims, he is procedurally barred from obtaining relief on these claims in federal court. *Nobles*, 127 F.3d at 422; *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998); *see also Gray v. Netherland*, 518 U.S. 152, 161-62, 116 S.Ct. 2074, 2080-81(1996).

Alternatively, should this Court decided that Monterrubio's second and third claims were, in fact, exhausted, they are still procedurally barred. Precedent dictates that a petitioner's federal habeas claim is defaulted where the last state court to consider that claim "clearly and expressly" dismisses it based upon on a state procedural rule that provides an adequate basis for relief, independent of the merits. *Coleman*, 501 U.S. at 731-32, 111 S.Ct. at 2456; *Nobles* 127 F.3d at 409; *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).

Both Monterrubio's second and third claims were dismissed by the Texas Court of Criminal Appeals based upon state procedural bars that provided "independent" and "adequate" grounds for dismissal. Specifically, his second was overruled by the state habeas court because he failed to properly brief the issue, and further neglected to explain why he was not procedurally barred from asserting a second writ doing such. SHTr 41-42. The court rejected his third claim on direct appeal because it was inadequately briefed in violation of Texas Rule of Appellate Procedure 74(f). *Monterrubio*, Slip Op. 72,028 at 6.

In order to satisfy the "independent and adequate" requirements, the court dismissal must have clearly indicated that it rested on a state ground that bars relief. *Finley*, 243 F.3d at 218. Further, that bar must be one that is strictly and regularly followed by the state courts. *Id.* The procedural bars used to dismiss Monterrubio's second and third claims meet the above stated requirements. Notably, the Fifth Circuit has explicitly determined that Texas' abuse of writ doctrine, which provided the basis for dismissal of his second claim, has strictly and regularly applied in Texas jurisprudence for many years. *See Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998)(finding that Texas' abuse of writ doctrine was firmly established and regularly followed in May 1995). Further, Texas court's have also consistently and regularly adhered to the bar dismissing inadequately briefed claims asserted on direct appeal. *See Aldrich v. State*, 928 S.W.2d 558, 559 (Tex.Crim.App. 1996); *Naravaiz v. State*, 840 sw2d 415, 429 (Tex.Crim.App. 1992); *Harris v. State*, 827 S.W.2d 949, 958 (Tex.Crim.App.1992).

Furthermore, Monterrubio does not attempt to demonstrate "cause" for the instant default, and none exists. The Supreme Court has held that the test for whether a petitioner has demonstrated cause has been "whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 487-88, 106 S. Ct. 2639, 2645 (1986). Monterrubio cannot, and does not, show cause for not bringing this claim before the state's highest court, and the record does not reflect an "external impediment" that may have prevented him from raising this claim in a procedurally correct manner. Nor can he show that a "fundamental miscarriage of justice" will result. A fundamental miscarriage implies that the barred "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S. Ct. at 2649. Monterrubio does not contest his guilt.

12

As such Monterrubio's claims are procedurally barred and not reviewable by this court.

## VII.

## STANDARD OF REVIEW

### A.    AEDPA

An application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 2000). The amended section 2254 establishes standard of review for each of the three different questions on which a judicial decision may rest, *i.e.*, questions of law, mixed questions of law and fact, and questions of fact. *See (Terry) Williams v. Taylor*, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519 (2000) (*"Williams I"*); *Dowthitt*, 230 F.3d at 740-41.

### 1.    Questions of law and mixed questions of law and fact

With regard to questions of law, the Supreme Court has held that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set fourth in [the Court's] cases," or reaches an opposite result when confronted with facts that are "materially indistinguishable" from a relevant Supreme Court precedent. *Penry v. Johnson*, 531 U.S. 1003, 121 S.Ct. 1910 1918 (June 4, 2001); *Williams I*, 529 U.S. at 405-406, 120 S.Ct. at 1519-20. Alternatively, when addressing a

13

mixed questions or law and fact, a state court "unreasonably applies" clearly established federal law if it correctly identifies the governing precedent, but unreasonably applies it to the facts of a particular case. *Penry*, 121 S.Ct. at 1918; *Williams I*, 529 U.S. at 407-09, 120 S.Ct. at 1520-21.

Justice O'Connor explained that while the term "unreasonable" is "no doubt difficult to define...it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning." *Williams I*, 529 U.S. at 410, 120 S.Ct. at 1522. The Court further held that a federal habeas court's inquiry into reasonableness should be objective rather than subjective, and a court should not issue the writ simply because that court concludes, in its independent judgment, that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id*. at 409-11, 120 S.Ct. at 1522. Rather, federal habeas relief is merited only where the state court decision is both incorrect *and* objectively unreasonable. *Penry*, 121 S.Ct. at 1918; *Williams I*, 529 U.S. at 411, 120 S.Ct. at 1522.

Importantly, an unreasonable application of federal law is different from a merely incorrect application of federal law. *Penry*, 121 S.Ct. at 1918; *Williams I*, 529 U.S. at 410, 120 S.Ct. at 1522. That is, habeas relief is appropriate when a state court, at a minimum, reaches a "satisfactory conclusion." *Williams I*, 529 U.S. at 410-11, 120 S.Ct. at 1522 (citing *Wright v. West*, 505 U.S. 277, 287, 112 S.Ct. 2482, 2487 (1992)). The Fifth Circuit has also held that it is the state court's "ultimate legal conclusion" that is to be tested for reasonableness, "and not whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *en banc re'hrg granted*, No. 99-60511, 2001 WL 1012760 (5th Cir. Sept. 5, 2001). Accordingly, section 2254(d) authorizes a federal habeas court "to review only a state court's 'decision,' and not the

14

written opinion explaining that decision." *Id.* Thus, the only question for a federal habeas court it "whether the state court's determination is at least minimally consistent with the fact and circumstances of the case." *Id.* (internal quotes and citation omitted).

## 2.     Questions of fact

With regard to questions of fact, section 2254(e)(1) requires federal courts to presume correct the factual findings of the state courts unless the petitioner rebuts the presumption of correctness with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (West 2000). Further, excluding the narrow exceptions contained in section 2254(e)(2), the evidence upon which an applicant would challenge a state court finding must have been presented to the state court. Because a federal habeas court is prohibited from granting relief unless a decision was base on "an unreasonable determination of the facts in light of the evidence *presented in the state court proceeding,*" 28 U.S.C. § 2254(e)(2) (emphasis added), it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner. In addition, where a habeas petitioner has failed to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless he can meet the narrow exceptions contained within section 2254(e)(2).

Therefore, if a federal habeas petitioner cannot demonstrate that the state court unreasonably determined that there were no controverted, previously unresolved factual issues presented by his state habeas application, he is not entitled to an evidentiary hearing on any issue in this Court unless he can meet the stringent requirements of section 2254(e)(2)(A)(ii) & (e)(2)(B). *See* TEX. CODE CRIM. PROC. art. 11071 §§ 8, 9 (Vernon Supp. 1999). The fact that the state court did not grant an evidentiary hearing on the issue is not dipositive, but the failure of the applicant to reasonably attempt to prove the necessity

15

of a hearing, *i.e.* that there were controverted, previously unresolved factual issues, to the state court, is sufficient to constitute "failure" under the plain meaning of section 2254(e)(2).[4] *(Michael) Williams v. Taylor*, 529 U.S. 420, 433, 120 S.Ct. 1479, 1488 (2000) ("*Williams II*"). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claims of actual innocence that can only be established by newly discovered evidence.[5] *Id.* at 436, 120 S.Ct. at 1490.

## B.    Standards Outside the AEDPA

In addition, the AEDPA did not purport to subsume prior precedent which forecloses habeas relief if a claim: 1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman*, 501 U.S. 722, 111 S.Ct. 2546; 2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989); or 3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)).

---

[4]    A "reasonable attempt" requires that a habeas applicant affirmatively seek an evidentiary hearing in state court in the manner prescribed by state law. *Williams I*, 529 U.S. at 437, 120 S.Ct. at 1490. The Fifth Circuit has held that "[m]ere request for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim" in state court. *Dowthitt*, 230 F.3d at 758.

[5]    Even if the habeas petitioner is able to meet the foregoing standard, it is within this Court's discretion to deny a hearing if sufficient facts exist to make an informed decision on the merits of his claim. *Clark v. Johnson*, 227 F.3d 284-85 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1129 (2001); *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000), *cert dis'd*, 121 S.Ct. 902 (2001).

## VIII.

## ANSWER AND MOTION FOR SUMMARY JUDGMENT
## WITH BRIEF IN SUPPORT

**A.    Monterrubio did not receive ineffective assistance of appellate counsel.**

In his first ground for federal habeas relief, Monterrubio maintains that appellate counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment. Specifically, he asserts that counsel was ineffective for failing to raise as error on direct appeal 1) that the admission of Sixto Monterrubio's confession into evidence deprived him of his Sixth Amendment right to confront and cross-examine witnesses against him, and 2) that the trial court erroneously allowed the inadmissible hearsay testimony of Delaila Zarate. Both claims lack merit.

As a initial matter, however, both of Monterrubio's ineffective assistance of appellate counsel claims are procedurally barred. *See section VII (A), supra*. Neither of these claims were presented to the state court for consideration and, as such, fail the exhaustion requirement set out in 28 U.S.C. § 2254 (b)(1). Because Texas' abuse of writ doctrine, codified in article 11.071 § 5 of the Texas Code of Criminal Procedure, prohibits Monterrubio from filing a successive writ asserting the unexhausted claims, Monterrubio is procedurally barred from obtaining relief on these claims in federal court. *Nobles v. Johnson*, 127 F.3d at 422; *Muniz v. Johnson*, 132 F.3d at 221; *see also Gray v. Netherland*, 518 U.S. at 161-162, 116 S.Ct. at 2080-81. Notwithstanding this procedural default, a federal habeas court may also deny relief on the merits. *See* 28 U.S.C. § 2254(b)(2).

A criminal defendant is constitutionally entitled to effective assistance of counsel on direct appeals as of right. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000); *Lombard v. Lynaugh*, 868 F.2d 1475, 1479 (5th Cir. 1989). The standard set out in

17

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), to prove that counsel afforded unconstitutionally ineffective assistance applies to claims regarding the adequacy of representation by both trial and appellate attorneys. *United State v. Merida*, 985 F.2d 198, 205 (5ᵗʰ Cir. 1993); *Williams v. Collins*, 16 F.3d 626, 635 (5ᵗʰ Cir. 1994), *cert. denied*, 512 U.S. 1289, 115 S.Ct. 42 (1994). Thus, Monterrubio must demonstrate that his appellate counsel's performance was deficient and that such deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

To establish deficient performance, a petitioner much show that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688, 104 S.Ct. at 2064-65; *see also Nix v. Whiteside*, 475 U.S. 157, 165, 106 S.Ct. 988, 993 (1986). The Supreme Court has admonished that judicial scrutiny of counsel's performance must be "highly deferential," with every effort made to avoid "the distorting effect of hindsight." *Stickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66. Accordingly, there is a strong presumption that the challenged conduct "falls within a wide range of reasonable professional assistance." *Id*.

Appellate counsel is not deficient for not raising every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983); *United States v. Williamson*, 183 F.3d 458, 462 (5ᵗʰ Cir. 1999). The Supreme Court has announced that appellate counsel filing a merits brief "need not, (and should not)" raise every available claim. *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 764 (2000). Instead, the Court recognized the importance of allowing appellate attorneys the freedom to select from available issues in order to maximize the likelihood of success on appeal. *Robbins*, 528 U.S. at 288, 120 S.Ct. at 764. Only "solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63.

18

Accordingly, in order to determine whether Monterrubio's appellate counsel was deficient, this Court must consider whether a challenge to Sixto's confession and Acala's hearsay testimony would have been sufficiently meritorious such that counsel should have asserted the claim on appeal. *Phillips*, 210 F.3d at 348. The Director contends that neither issue had merit sufficient to warrant appeal.

In addition to establishing the deficiency of counsel's performance, petitioner is required to affirmatively prove prejudice arising from the alleged error. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Prejudice is proven where the petitioner is able to demonstrate a reasonable probability, that but for counsel's deficiencies, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. 104 S.Ct. at 2068; *Williams*, 529 U.S. at 393-94, 120 S.Ct. at 1513-14. In the appellate context, proof of prejudice requires a showing that, but for counsel's error, the appellate court would have afforded relief. *See Smith v. Robbins*, 528 U.S. at 285, 120 S.Ct. at; *Sharp v. Puckett*, 930 F.3d 450, 453 (5th Cir. 1991). Monterrubio must, therefore, demonstrate a reasonable probability that the claims counsel failed to raise would have succeeded on direct appeal had they been asserted.

### 1. Monterrubio's challenge to the admissibility of Sixto's confession lacks merit.

Counsel was not ineffective for failing to challenge the admissibility of Sixto's confession on direct appeal. Counsel's efforts to obtain relief from the Texas Court of Criminal Appeals on such a claim would have been futile, as the argument asserted by Monterrubio to support the inadmissibility of Sixto's confession has been explicitly rejected by the Texas Court of Criminal Appeals.

It is Monterrubio's contention that the use of Sixto's confession to satisfy a substantive element of the State's burden of proof deprived him of his Sixth Amendment

19

right to confront and cross-examine the witnesses against him. However, when faced with a similar claim in *Dewberry v. State*, the Texas Court of Criminal Appeals held that hearsay accounts of statements made by an accomplice were properly admitted as evidence against the accused. *Dewberry v. State*, 4 S.W.3d 735, 754 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008 (2000). Specifically, the court found that these out-of-court statements were admissible as declarations against interest. *Dewberry*, 4 S.W.3d at 748; *see also* Tex.R.Crim.Evid. 803(24).

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." U.S.Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 403 85 S.Ct. 1065, 1067-68(1965)(applying the Sixth Amendment to the States as incorporated by the Fourteenth Amendment). The central concern of this constitutional provision is to ensure the reliability of the evidence offered against the accused "by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 3163 (1990).

However, this right to confrontation is not without exceptions. In narrow circumstances, the right to a face-to-face confrontation has been limited to permit the admissibility of certain hearsay statements where the reliability and trustworthiness of those statements is otherwise established. *See Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775 (1987). Hearsay statement are sufficiently dependable and, thus, admissible against an accused when 1) "the evidence falls within a firmly rooted hearsay exception" or 2) the evidence contains "particularized guarantees of trustworthiness" making adversarial testing unnecessary. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539 (1980).

Under the Texas Rules of Criminal Evidence, statements made against the declarant's

20

penal interest are not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." Tex.R.Crim.Evid. 803(24). The Court of Criminal Appeals articulated numerous factors to be considered when determining whether there is sufficient corroboration to clearly indicate the trustworthiness of a particular statement. *Dewberry*, 4 S.W.3d at 751.[6] The Court in *Dewberry* ultimately determined that there were sufficient corroborating circumstances guarantee the reliability and trustworthiness of the hearsay statements offered against the appellant. *Id*. at 751-52.

Applying *Dewberry* to the instant case, it is evident that the circumstances surrounding Sixto's confession provide sufficient corroboration to clearly indicate the trustworthiness of his statement. First, Sixto's guilt is not inconsistent with the guilt of the defendant, Monterrubio. In fact, their confessions are strikingly similar with no effort made to shift blame to the other. Secondly, the record indicates that Sixto was situated such that he could have committed the crime. There is testimony from several different witnesses who reported that Carla was planning on meeting up with Sixto on the night she disappeared. 16 SR 99, 125-26, 145. Finally, there exist facts in the record that independently corroborate Sixto's confession, including the location of the body, evidence from the medical examiner consistent with Sixto's account of their attack, location of blood stains in the car, and the notes in his handwriting that he alleged had been written by Carla. 16 SR 167, 170, 271, 281, 321 Consequently, Monterrubio cannot establish that the introduction of Sixto's confession during guilt-innocence violated his right to confrontation. Considering the Texas Court of Criminal Appeals decision in *Dewberry* and it's impact on Monterrubio's claim,

---

[6] The Court of Criminal Appeals held that a trial court should consider the following factors: (1) whether guilt of declarant is inconsistent with guilt of defendant, (2) whether declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement is made, and (6) the existence of independent corroborative facts. *Id.*

CHPDF - www.fastio.com

appellate counsel was not deficient for failing to raise this issue on direct appeal.

Further, the deficiencies in Monterrubio's Sixth Amendment claim preclude his ability to establish prejudice resulting from counsel's failure to raise this issue on direct appeal. As discussed above, a petitioner seeking to prove prejudice derived from counsel's failure to raise a particular issue on appeal must show a reasonable probability that the claim would have been sustained on appeal. Here, the Texas court's decision in *Dewberry* clearly indicates that Monterrubio's claim would have failed on direct appeal. Consequently, Monterrubio cannot prove prejudice sufficient to support his ineffective assistance of counsel claim.

### 2. *Any error found in by the Court of Criminal Appeals in admitting the hearsay testimony offered by Delaila Zarate would have been harmless.*

Monterrubio is similarly unable to prove prejudice resulting from appellate counsel's failure to contest on direct appeal the trial court's admission of hearsay testimony by Delaila Zarate.[7] During her direct examination by the State, Zarate testified that Carla told her she was angry because Monterrubio tried to "put the moves" on her, and when Carla asked Sixto to take Monterrubio home, he took her home instead. 16 SR 111-114. This evidence was admitted over trial counsel's objection. 16 SR 113. Despite Monterrubio's implications, a claim based upon this admissibility of this evidence would not warrant reversal by the Texas Court of Criminal Appeals.

Under Texas law, a judgment will not be reversed for error in the admission of evidence that did not injure the appellant. *Ward v. State*, 657 S.W.2d 133, 137 (Tex.Crim. App. 1983). At the time of Monterrubio's appeal, an error was considered harmless if the

---

[7]     Monterrubio identifies Gilbert Acala as the witness who offered the hearsay testimony regarding his relationship with Carla. However, the portions of the records cited indicate that the testimony was, in fact, offered by Delaila Zarate. *See* AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS.

court determined "beyond a reasonable doubt that error made no contribution to the conviction or punishment." *Williams v. State*, 838 S.W.2d 952, 954 (Tex.Crim.App. 1992); *see also* Tex.R.App.P. 81(b)(2) (1995). In making such a determination the court examined the source of the error, the nature of the error, whether or to what extent the state emphasized it, and its probable collateral implications. *Id*. Further, the court considered how much weight a juror would probably place upon the error and asked whether a rational trier of fact might have reached a different conclusion if the error and its effects had not occurred. *Id.*

When the error alleged in the instant case is viewed in accordance with the applicable Texas law, as set out above, it becomes rather obvious that the admission of Zarate's hearsay testimony was harmless error. Given the overwhelming evidence of guilt before the jury, it is not likely that Zarate's testimony regarding the fact that Carla did not like Monterrubio because he tried to "put the moves on her" had any impact on their verdict at either guilt-innocence or punishment. The jury was allowed to hear portions of both Sixto and Monterrubio's confessions detailing the grisly nature of the crime. The State also presented evidence to independently corroborate their account of the murder . *See section VII (A)(1), supra.*

The harmless nature of this error, assuming that it was, in fact, error to allow the admission of the evidence in question, prevents Monterrubio from demonstrating a reasonable probability that this claim would have prevailed on appeal. As such, he has not proven prejudice and is wholly without support for his ineffective assistance of counsel claim. Relief should be denied.

**B.    Monterrubio did not receive ineffective assistance of trial counsel.**

Monterrubio maintains in his second claim that he is entitled to federal habeas relief because he was denied effective assistance of trial counsel in violation of the Sixth Amendment. Specifically he argues that trial counsel was ineffective for failing to (1) request a special venire panel; (2) challenge venire member Laura Becerra for cause; (3) properly voir dire the jury panel on punishment issues; (4) object to inadmissible hearsay testimony offered by several of the State's witnesses; and (5) offer adequate mitigation evidence during punishment. As an initial matter, relief on these claims should be denied because they are procedurally barred in federal court. *See* Section VII (A), *surpa*. Alternatively, these claim fail on the merits.

*1.    Trial counsel was not ineffective for failing to request a special venire.*

Monterrubio first faults counsel for not requesting a special venire panel pursuant to article 34.01 of the Texas Code of Criminal Procedure. Under this article, a capital defendant may move the trial court to summon a "special venire panel" that is separate and apart from the venire summoned for regular jury service. TEX.CODE CRIM.PROC. art. 34.01 (1995). The jury panel summoned for service in Monterrubio's case was the same panel that had been summoned for regular jury service the week prior. 8 SR 11. Consequently, the venire had already been subject to voir dire in several other criminal and civil cases. *Id*. Trial counsel filed a motion to strike the panel, urging that the potential pool of jurors had been diluted by the selection of jurors for service in other cases and was, thus, not representative of the whole. *Id*. The trial court denied counsel's motion to strike and request to summon a new panel. 8 SR 12.

Monterrubio contends that had counsel simply filed a motion pursuant to art. 34.01, a special venire panel would have been summoned, and he would not have been forced to

24

select venire members for his jury that had already served in other criminal cases. However, he completely ignores the fact that under Texas law, the decision on whether to grant a motion to summon special venire is entirely within the discretion of the trial judge. *Esquivel v. State*, 595 S.W.2d 516, 519-20 (Tex.Crim.App. 1980). The trial court's ruling on counsel's motion to strike is a clear indication of how it would have received a motion to summon a special venire under article 34.01.

Thus, Monterrubio is entirely without support for his ineffective assistance of counsel claim. In order to succeed on this claim, he is required to prove both that counsel was deficient in his performance and that such deficiency prejudiced his defense. *Strickland, supra*. He can do neither. That trial counsel filed a motion to strike instead of a motion to summon a special venire pursuant to article 34.01 does not denote deficient performance. The record clearly indicates that the substance of counsel's motion to strike was similar, if not identical, to the motion that Monterrubio maintains should have been filed. There is no reason to conclude that the trial court would have granted a motion for a new jury panel simply because it was expressly filed pursuant to article 34.01. Further, trial counsel is not ineffective for failing to make futile motions and objections. *Clark v. Collins*, 19 F.3d 953, 966 (5th Cir. 1994).

For these same reasons, Monterrubio is unable to establish prejudice resulting from trial counsel's failure to file a motion to summon a special venire. Because the ultimate decision on whether to grant such a motion is subject to the discretion of the trial judge, and there are obvious indications that the trial court would have denied that motion in the instant case, Monterrubio cannot prove prejudice. This Court should deny relief on this claim.

**2.      Trial counsel was not ineffective for allowing venire member Laura Becerra to serve on the jury.**

Monterrubio next asserts that trial counsel rendered ineffective assistance by allowing venire member, Laura Becerra, to serve on the jury.  Specifically he contends that trial counsel should have challenged Becerra for cause because she indicated that she would automatically assess the death penalty if she were to find Monterrubio guilty of the crime charged.  This claim is entirely without merit.

Monterrbio's assertion that Becerra would automatically assess the death penalty if she were to find him guilty in not supported in the record.  To support this assertion, he cites to a portion of the record where Becerra states, during the prosecution's voir dire, that she "probably would go with the death penalty" if Monterrubio were proven guilty.  16 SR 220.  This statement in no way indicates that Becerra would automatically assess the death penalty.  At worst, her statement reflects that she would likely vote in favor of the death penalty, if the issue arose.  Moreover, trial counsel followed up on this statement during the defense's voir dire by clarifying that Becerra would, indeed, be open minded enough to consider both punishment options, not just death.  20 SR 225.

The proper standard for determining when a veniremen may be excused for cause because of his/her views is unequivocally set out in *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct.844, 852 (1845).  There, the Court stated that the critical inquiry is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath.'"  *Id.* at 424, 105 S.Ct. 852 (quoting *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526).  A venire member must, therefore, be willing not only to accept that the death penalty is, in certain circumstances, an acceptable punishment, but

26

also to answer the statutory questions without conscious distortion or bias.[8] *Mann v. Scott*, 41 F.3d 968, 981 (5th Cir. 1994) *cert denied*, 514 U.S. 1117, 115 S.Ct. 1977 (1995)(citing *Adams*, 448 U.S. at 46, 100 S.Ct. at 2527).

There was, therefore, no basis upon which to challenge Becerra for cause, and consequently no support for Monterrubio's ineffective assistance of counsel claim. He cannot demonstrate that counsel was deficient for allowing Becerra to serve on the jury where there is no plausible reason to excuse her from service.[9] Likewise, he is also unable to establish any prejudice resulting from Becerra's service on the jury. Relief on this claim should be denied.

### 3. Trial counsel was not ineffective in his voir dire of the venire on punishment issues.

In his third allegation, Monterrubio avers that trial counsel failed to effectively voir dire the venire on punishment issues. Specifically, he complains that counsel afforded too much attention to questioning the panel regarding whether they could consider probation for the lesser included offense of murder. He further faults counsel's for failing to adequately inquire of individual venire members regarding the issues of future dangerousness and mitigation. Despite his allegations, Monterrubio is unable to demonstrate, as the *Strickland* standard requires, that counsel was deficient in his performance during voir dire, or that he

---

[8]Texas juries are required to answer certain special issues on punishment, submitted to them pursuant to Tex.Code Crim.Proc. art. 37.071 § 2

[9]     To the extent that Monterrubio would argue that trial counsel's failure to use a peremptory challenge to strike Becerra constituted ineffective assistance, he has fail to demonstrate either deficient performance by counsel or prejudice. Counsel's decisions during voir dire are considered a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). Decisions regarding trial tactics cannot be the basis of an ineffective assistance of counsel claim unless counsel's tactics are shown to be "so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1993)); see also *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2056-66 (noting that proof of deficient performance requires petitioner to overcome the strong presumption that counsel's conduct may be considered sound trial strategy).

was prejudice by that performance.

Importantly, counsel's decisions regarding the voir dire on punishment issues are considered a matter or trial strategy. *See Teague*, 60 F.3d at 1172. Decisions regarding trial tactics cannot be the basis of an ineffective assistance of counsel claim unless counsel's tactics are shown to be "so ill chosen that it permeates the entire trial with obvious unfairness." *Id*. Moreover, the Fifth Circuit has explicitly declined to second-guess counsel's strategic choices on federal habeas review. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

Monterrubio offers nothing to overcome the presumption that the questions asked by counsel during voir dire were anything less than conscious, well informed choices based upon sound trial strategy. Simply identifying those questions asked and not asked regarding punishment issues, without more, is insufficient to prove, by a preponderance of the evidence, that counsel was deficient in his performance. *See Martin v. Maggio*, 711 F.2d 1273, 1279 (5th Cir. 1983)(holding that the burden is on the petitioner to prove effective assistance of counsel by a preponderance of the evidence). Moreover, conclusory allegations of ineffective assistance of counsel, without more, do not warrant habeas relief. *Kinnamon v. Scott*, 40 F.3d 731, 734-35 (5th Cir. 1994). Thus, Monterrubio has wholly failed to carry this burden of proof in regard to this claim.

He is similarly unable to prove that he was prejudice by counsel's voir dire on the issue of punishment. To meet the prejudice prong, the petitioner must affirmatively prove, and not merely allege, prejudice. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369 (1986). Here, Monterrubio neglects to even allege possible prejudice arising from the alleged inadequacy of counsel on voir dire. Accordingly, this Court should deny relief on this claim.

28

### 4.    Trial counsel was not ineffective for failing to object to hearsay testimony offered by several of the State's witnesses.

Monterrubio argues that trial counsel was ineffective for not objecting to hearsay testimony offered by State witnesses Yvette Urie, Gilbert Acala, Delaila Zarate, Julie Ramirez, and Jorge Homero Hinojosa. He further urges the hearsay testimony offered by these witnesses was injurious and prejudicial to his defense. Monterrubio's discussion regarding this claim details several hearsay statements testified to by each witness. It is unclear whether he is asserting that each statement alone constitutes the basis for an ineffective assistance claim, or whether it is the effect of the statements as a whole that supports as claim of ineffectiveness.[10]

The first series of hearsay statements relate to Carla's relationship with Monterrubio. Yvette Urie testified that Carla thought Monterrubio was creepy and weird. 16 SR 58, 54. She also told the jury of an incident where Monterrubio appeared in Carla's homeroom class and kept staring at her, making her feel like he was watching her. 16 SR 87. Delaila Zarate testified that Carla told her about being angry with Monterrubio because he "tried to put the moves" on her. 16 SR 113.

Trial counsel was not ineffective in allowing the admission of the above referenced testimony. Initially, the Director would point out that counsel did, in fact, object to the introduction of Zarate's testimony regarding Monterrubio's attempts to "put the moves" on Carla. 16 SR 113. Hence, there is no basis for an ineffective assistance of counsel claim with regard to this statement. It is also important for this Court to note that while Urie was a State witness, the testimony complained of was also elicited by the defense during cross-

---

[10]    While Monterrubio discussed the hearsay evidence objected to in accordance with the witness testifying, the Director responds to this claim by addressing the evidence according to the subject matter of the hearsay statement with the belief that this will facilitate the Court's analysis of this issue.

examination, thus indicating that counsel's failure to object to the hearsay nature of this evidence was a deliberate and conscious decision made in pursuant to trial strategy, rather than negligence.

As previously discussed, a petitioner seeking relief on an ineffective assistance of counsel claim must overcome the strong presumption that the challenged conduct may be considered sound trial strategy. *Strickland, supra*. Conscious and informed decision on trial tactics and strategies cannot be the basis of an ineffective assistance of counsel claim unless those decisions are so ill chosen as to permeate the entire trial with obvious unfairness. *Green, supra*. Monterrubio offers nothing to overcome this presumption. As such, failed to prove that counsel's performance in this matter was deficient.

The second group of hearsay statements pertain to Carla's relationship and interaction with Sixto. Zarate, Gilbert Acala, and Julie Ramirez each testified regarding what Carla relayed to them about the times she would sneak out of her house after curfew to meet up with Sixto. 16 SR 100, 111-112, 137. These witnesses were also allowed to tell what Carla told them about getting drugs and money for drugs from Sixto. 16 SR 103, 121-22, 149. Further, Acala and Zarate conveyed to the jury what Carla told them about her plans to meet up with Sixto on the night she disappeared, and Julie Ramirez gave hearsay accounts of Carla's opinion of Sixto, that he was short, chubby and ugly, and of their conversations regarding Sixto's relationship with other people. 16 SR 99, 123, 149-151.

Here again, there is strong indication that counsel's failure to object to this testimony on hearsay grounds was a calculated decision based upon sound trial strategy. Although tried separately, Sixto and Monterrubio were both charged with capital murder for sexually assaulting and killing Carla Villarreal. It would appear that, to the extent possible, counsel was attempting to divert attention and blame from Monterrubio onto his accomplice, in

30

effort to cast doubt on whether Monterrubio had the requisite culpable mental state required to convict on capital murder. Shifting the primary blame and responsibility from one actor to another is a valid and sound defense strategy. Counsel was not, therefore, ineffective for failing to object to the introduction of this evidence.

Finally, Monterrubio faults counsel for allowing Jorge Homero Hinojosa, Carla's step father to give testimony regarding his daughter's character and hearsay statement from several people he encountered during the investigation of Carla's disappearance. 20 SR 154, 161-62, 166, 167. Despite the fact that much of this evidence is clearly hearsay, Monterrubio has failed to show that he was prejudiced by the admission of this evidence.

The prejudice prong of an ineffective assistance of counsel claim must be affirmatively proven, not merely alleged. *See Lockhart, supra.* Monterrubio's conclusory assertions regarding the injurious nature of these hearsay statements are insufficient to prove, by a preponderance of the evidence, a reasonable probability that admission of this testimony effected the jury's verdict on guilt-innocence. Further, it is not only with regard to Hinojosa's testimony that Monterrubio has failed to prove prejudice. He similarly, fails to assert how the hearsay testimony by the other four witnesses impacted the outcome of his trial. Accordingly, relief on this claim should be denied.

### 5. *Trial counsel was not ineffective in his presentation of mitigating evidence during the punishment phase of Monterrubio's trial.*

In his final allegation, Monterrubio maintains that trial counsel was ineffective for failing to present mitigating evidence during the sentencing phase of his trial. Specifically, he complains that trial counsel presented no evidence to the jury that would justify a sentence less than death. He further asserts that "the record reflects a significant amount of evidence available to the defense without any investigation at all."

31

Once again, Monterrubio's claim is entirely conclusory, lacking the support necessary to prove that he is entitled to relief under the Sixth Amendment. First, he has not shown that counsel's performance in presenting mitigating evidence on punishment was deficient. Despite his assertion, regarding the mitigation reflected in the record, Monterrubio fails to specifically identify what, if any, mitigating evidence counsel could have asserted. He merely suggests that counsel should have pursued the issue of whether he was under the control and domination of his cousin, Sixto, and brought forth an expert to testify regarding the likelihood of his committing an act of violence in the future.

He does not, however, provide any affidavits from possible witnesses who could offered evidence to support either contention. Although Monterrubio claims that counsel should have produced testimony from an expert regarding whether he constituted a future danger, without an affidavit or report from an expert who examined Monterrubio for this purpose, he cannot prove the mitigating nature of any such testimony. Further, the record reveals that counsel did, in fact, attempt to elicit testimony from witnesses regarding the extent to which Monterrubio's action were influenced by Sixto, but with little success. 20 SR 16-17, 23-24.

To support a claim of ineffective assistance of counsel due to uncalled witnesses, Bruce would have to prove that these witnesses were willing and able to testify, and what they might have testified to. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). The Fifth Circuit has held that such complaints are not favored on federal habeas review because allegations of how witnesses would have testified are largely speculative. *Lockhart v. McCotter*, 782 F.2d 1275, 1283 (5th Cir. 1986).

Accordingly, there is nothing demonstrating that the evidence presented by counsel on punishment was inadequate, such that his performance in this matter was deficient. The

32

mere lack of mitigating evidence is not enough, where it has not been shown that other mitigation was available. Counsel was not, therefore, ineffective in his representation of Monterrubio during the punishment phase of his trial.

For the same reasons, Monterrubio is unable to establish that he was prejudiced by counsel's presentation of mitigating evidence on punishment. He is required to affirmatively prove, that but for counsel's alleged error, a reasonable probability exists that the results of the proceeding would have been different. *Strickland, supra*. Without asserting specific mitigating evidence that was omitted by counsel, it is impossible to determine any possible impact additional mitigating evidence might have had on the verdict. This Court should deny relief on this claim.

**C.     Monterrubio was not deprived of his Sixth Amendment privilege against self-incrimination.**

In his third claim Monterrubio alleges that the State infringed upon his Fifth Amendment privilege against self-incrimination by interrogating him after his invoked his right to counsel. He further argues that his confession to police, wherein he admitted to the sexual assault and murder of Carla Villarreal, is tainted by this constitutional violation. As previously discussed in section VII (A), *surpa*, Monterrubio is procedurally barred from obtaining relief on this claim in federal court. Alternatively, this claim fails for lack of merit. The Fifth Amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S.CONST. amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), the Supreme Court recognized that the right to have counsel present during a custodial interrogation is a necessary and integral component of this privilege against self incrimination. *Id*. at 469, 86 S.Ct. at 1625. Thus, when the suspect expresses his desire for an attorney, officers are

33

required to cease questioning until an attorney is present. *Id*. at 474, 86 S.Ct. at 1628.

As a initial matter, Monterrubio's Fifth Amendment claim fails because he was not subject to a custodial interrogation. *See Davis, supra*. A person is in custody for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest. *United States v. Paul*, 142 F.3d 836, 843 (5th Cir. 1998), *cert. denied*, 525 U.S. 919, 119 S.Ct. 271 (1998). Monterrubio  voluntarily accompanied the officers to the police station, and agreed to answer questions regarding his whereabouts on the night Carla disappeared. Further, the officers testified that, prior to confessing, Monterrubio was not under arrest and was free to leave at any time. Moreover, Monterrubio was not a suspect. The officers' were only interested in whether he could confirm the veracity of Sixto's alibi. Consequently, the Fifth Amendment privilege against self-incrimination and right to an attorney have no implication in the instant case.

Monterrubio's claim is also without merit because, even assuming that he was a suspect subject to a custodial interrogation, he cannot demonstrate that he actually invoked his right to counsel. The invocation of the right to counsel must be unambiguous and unequivocal. *Davis v. United States*, 5512 U.S. 452, 458-59, 114 S.Ct. 2350, 2354-55 (1994). A suspect must articulate his desire to have counsel present with sufficient clarity to allow a reasonable police officer in the circumstances to understand the statement to be a request for an attorney. *Id*. at 459, 114 S.Ct. at 2355. A request that leads a reasonable officer in light to the circumstances to understand only that the suspect *might* be invoking the right to counsel, is not sufficient. *Id*.

34

In this instant case, Monterrubio never requested that counsel be present during his interrogation. Instead, he merely asked Detective Lupio to inquire of his uncle, Sixto Monterrubio, Sr., whether he would be able to get an attorney for Monterrubio if he needed one. This statement is not one that would lead a reasonable officer, in light of the circumstances to conclude that Monterrubio was invoking his right to counsel as assigned under the Fifth Amendment to protect an accused's right against self incrimination. Importantly, his reference to an attorney, although communicated through an officer, was directed to Monterrubio's uncle. Further, he did not actually request that his uncle secure an attorney for him, but instead asked whether he would be willing to secure one if needed.

Monterrubio has wholly failed to establish that he unambiguously and unequivocally requested to police that an attorney be present during his interrogation. Moreover, such a request was unnecessary since Monterrubio was not a suspect subject to a custodial investigation. For these reasons, his claim lacks merit and relief should be denied.

**D.    The evidence was sufficient to support an affirmative finding of future dangerousness.**

Pursuant to article 37.0711 of the Texas Code of Criminal Procedure, the jury responded affirmatively to the second special issue on punishment, finding that there existed "a probability that the defendant, Jose Ignacio Monterrubio, would commit criminal acts of violence that would constitute a continuing threat to society. I-B Tr 347, *see also* Tex.Code Crim.Proc. Art. 37.0711 § 3(b)(2)(1995). Monterrubio contends that the evidence offered during the punishment phase of his trial, was insufficient to support the jury's affirmative finding on this special issue.

Monterrubio previously presented this claim to the Texas Court of Criminal Procedure on direct appeal. There the state court concluded that the evidence was, indeed,

35

sufficient to support the jury's finding. Monterrubio has failed to demonstrate that the state court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, habeas relief should be denied.

In reviewing challenges to the sufficiency of the evidence, this Court examines all evidence in the light most favorable to the verdict, and asks whether any rational trier of fact could have found the issue in controversy to have been proved beyond a reasonable doubt. *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000), *cert. denied*, 531 U.S. 849, 121 S.Ct. 122 (2000); *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993)(citing *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2787 (1979). This standard is applied looking to the state's substantive law, giving great weight to the state court's determination. *Miller*, 200 F.3d. At 286; *Fay v. Donnelly*, 959 F.2d 1307, 1313-14 (5th Cir. 1992).

The issue here is whether any rational trier of fact could have found beyond a reasonable doubt that there exists a probability that Monterrubio "would commit criminal acts of violence in the future and constitute a continuing threat to society." I- B Tr 347, *see also* Tex.Code Crim.Proc. art. 37.0711 § 3(b)(2)(1995). Monterrubio argues that the meager evidence presented by the State during punishment was insufficient to establish that he would pose a future danger to society. He alludes to the fact that the State's only evidence on punishment was the victim impact testimony of Carla Villarreal's mother and sister. 20 SR 3-10.

However, the Fifth Circuit has recognized that under Texas law, the facts of the crime, alone, if severe enough, can be sufficient to support an affirmative finding of future dangerousness. *Miller*, 200 F.3d at 286 (citing *Voung v. State*, 830 S.W.2d 929, 935 (Tex.Crim.App. 1992). Monterrubio and his cousin, Sixto, brutally murdered and raped their fifteen year old friend, Carla Villarreal. Carla was beaten on the head with a tire iron

36

and then forced to have vaginal, anal, and oral sex with the two cousins. 16 SR 265-70, 17 SR 452-53. When they were finished with sexually assaulting her, Sixto and Monterruio fumbled through several attempts to kill her before they finally succeeded, including attempts to strangle her with a towel and break her neck with their hands. *Id*. They also beat her with a large stick, stabbed her with a pocketknife, and sprayed tire foam into her nose, mouth, and wounds, before smothering her with a tee-shirt. *Id*.

Adding to the heinous nature of this crime was the fact that the attack was prolonged by Carla's attempt to escape and their constant stopping to drive to a new location for fear for being discovered. *Id*. Their callousness was further evident in the way they attempted to cover up Carla's murder and deliberately deceive her family and police into thinking that she had merely run away from home. They moved her body several times, and Sixto wrote letters, purportedly from Carla, to Carla's family and himself in an effort to divert the police investigation. *Id*.

When considering this issue on direct appeal, the Court of Criminal Appeals concluded that these facts, alone, were sufficient to support the jury's affirmative finding on the future dangerousness special issue. In reaching that conclusion the court stated that, "the extreme brutality and violence of the offense betrays a most dangerous aberration of character from which a rational juror could conclude that [Monterrubio] poses a continuing threat to society." *Monterrubio,* Slip Op. 72, 028 at 5. The court further noted that a young man capable of inflicting such fatal humiliation and brutality upon a "friend," without any sign of remorse, is a continuing threat to society. *Id*.

Monterrubio offers nothing to refute the reasonableness of the state court's adjudication of this claim. His petition merely contains the conclusory allegation regarding the insufficiency of the evidence and the assertions that he had never previously been

37

_Tina J. Dettmer_

TINA J. DETTMER
Assistant Attorney General
State Bar No. 24026139
Office of the Attorney General
Capital Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
Telephone:  (512) 936-1600
Telecopier:  (512) 320-8132

ATTORNEYS FOR RESPONDENT

# CERTIFICATE OF SERVICE

I, TINA J. DETTMER, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent Cockrell's Answer and Motion for Summary Judgment has been served by placing same in the United States mail, postage prepaid, on this the 20th day of September, 2001, addressed to counsel for Petitioner as follows:

Michael Charlton
1744 Norfolk
Houston, Texas 77098

Elisa Vasquez
613 19th Street
Galveston, Texas 77550

TINA J. DETTMER
Assistant Attorney General

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| *JOSE IGNACIO MONTERRUBIO* | § | |
| Petitioner, | § | |
| | § | |
| *v.* | § | MISC. NO. B-00-018 |
| | § | |
| *JANIE COCKRELL, DIRECTOR,* | § | |
| *TEXAS DEPARTMENT OF CRIMINAL* | § | |
| *JUSTICE, INSTITUTIONAL DIVISION* | § | |
| Respondent. | § | |

## ORDER

Came on this day to be considered, and the Court, after considering the pleadings of the parties filed herein, is of the opinion that the following order should issue:

It is hereby ORDERED, ADJUDGED and DECREED that Respondent Cockrell's Motion for Summary Judgment be, and it is hereby granted.

SIGNED on this the _____ day of _____, 2001, at Brownsville, Texas.

_____
JUDGE PRESIDING