**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

OCT 3 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOSE IGNACIO MONTERRUBIO | X | |
| | X | *CAB-01-112* |
| V | X | CAUSE NO. ~~MISC NO. B-00-018~~ |
| | X | |
| JANIE COCKRELL, Director | X | |
| Texas Department of Criminal Justice | | |
| Institutional Division | | |

### PETITIONER'S SUMMARY JUDGMENT RESPONSE

Comes now the Petitioner, Jose Ignacio Monterrubio, to file the following Summary Judgment Response:

I.

Mr. Monterrubio is a death sentenced inmate whose petition for writ of habeas corpus is currently pending before this Court. The Respondent, Janie Cockrell has filed a motion for summary judgment to which Mr. Monterrubio responds.

II.

Ms. Cockrell's argument is essentially that the claims are unexhausted, they are procedurally barred and three unworthy of relief on the merits.

III.

Mr. Monterrubio will address the merits of each claim individually.

A. Sixth Amendment Right of Cross Examination

In his Petition for Writ of Habeas Corpus, Mr. Monterrubio contended that this Sixth Amendment right of cross examination was violated when the State sought to admit the

*Monterrubio Summary Judgment Response*
*October 29, 2001 p.1*

confession of his codefendant, Sixto Monterrubio over his objection. The State's avowed

purpose was to provide sufficient evidence of the corpus delicti of capital murder, in this case the

missing element of sexual assault.[1]

Ms. Cockrell argues that Sixto's statement was properly admitted because it was a

declaration against interest, citing **Dewberry v. State,** 4 S.W.3d 735, 754 (Tex.Crim.App. -

1999). Further, because the admission of the statement fell within a firmly rooted hearsay

exception and because the statement contained a particularized guarantee of trustworthiness, the

Sixth Amendment was satisfied. Motion of Respondent, p. 20 citing **Ohio v. Roberts**, 448 U.S.

56, 66 (1980).

This argument ignores the effect of **Lilly v Virginia**, 527 U.S. 116 (1999). There the

Supreme Court held that "our cases consistently have viewed an accomplice's statements that

shift **or spread** the blame to a criminal defendant as falling outside the realm of those 'hearsay

exceptions' [that are] so trustworthy that adversarial testing can be expected to add little to [ the

statements'] reliabilty." **Lilly v Virginia**, supra citing **White v. Illinois**, 503 U.S. 346, 357

(1992). Further, the Court ruled that it was "highly unlikely that the presumptive unreliability that

---

[1] Mr. Jose Monterrubio confessed to both killing and raping the victim. Under Texas law, that confession standing alone will not provide sufficient evidence of the corpus delicti of the offense. Something more must be introduced, in effect, to corroborate that statement. Further, under Texas law, the offense of capital murder requires proof, not just of the murder, but of the underlying felony as well. Because the victim was found some long period of time after her death, the only corroboration that could be provided as to the element of murder. No other corroboration existed, except for Sixto Monterrubio's statement, a statement which the Texas Court of Criminal Appeals ruled in Petitioner's case, provided the necessary corroboration. See **Monterrubio v. State,** unreported decision, cause no. 72,028 (Tex.Crim.App. - 1996). Thus, the statement was used for a substantive purpose and was thus, subject to Sixth Amendment analysis. None of this is contested by the parties.

*Monterrubio Summary Judgment Response*
*October 29, 2001 p.2*

attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old *ex parte* affidavit practice – that is, when the government is involved in the statements production, and when the statements describe past events and have not been subjected to adversarial testing."

This Court s "squarely rejected" the concept that evidence corroborating the out of court statement's truth might supply the necessary "guarantees of trustworthiness." **Lilly v. Virginia** citing **Idaho v. Wright**, 497 U.S. 805 (1990). The standard is that set forth in **Idaho v. Wright**:: reliability is a factor that should be determined from the totality of the circumstances but **the only relevant circumstances are those surrounding the making of the statement that make the declarant worthy of belief**. In other words, the declarant's truthfulness must be so clear from the surrounding circumstances of the statement's making that the test of cross-examination would be of marginal utility. Id. In short, the Court rejected the very analysis Ms. Cockrell attempts to make here: that the statement is reliable because it is corroborated by other evidence. There is no evidence surrounding the making of the statement that would suggest it was reliable.

Mr. Monterubio's Sixth Amendment rights were violated and it is clear he was prejudiced by that error. As noted above, the statement provided the only corroboration required by the State's corpus delicti rule and the Court of Criminal Appeals so ruled.

B. Mr. Monterrubio's request for counsel

As urged in the amended petition for writ of habeas corpus, Mr. Monterrubio's Fifth Amendment right against self incrimination was violated when the police failed to recognize his invocation of the right to counsel. The police picked up Mr. Monterrubio and asked him to come to the police station. Though he was not under arrest, they did give him his **Miranda** warnings.

*Monterrubio Summary Judgment Response*
*October 29, 2001 p.3*

At one point, Mr. Monterrubio told an officer to tell his uncle, Sixto Monterrubio Sr. to get a lawyer for him, if he needed one.  The officer relayed that information to the uncle[2] Officer's Lucio and Pineda interrogated Mr. Monterrubio.  While they at first, claimed to have no suspicion of Mr. Monterrubio's involvement in the murder of Carla Villareal.  At one point, however they became very suspicious when Mr. Monterrubio became very nervous and gave contradictory statements. At this point, Mr. Monterrubio was in custody for Fifth Amendment purposes.  Officer Lucio then went to Sixto, Sr., the uncle, and asked him to speak to his nephew to get Mr. Monterrubio to tell them the truth about what occurred. See SF-III-57. See also SF-XVII-386.  Before the uncle was brought upstairs to see Mr. Monterrubio, Mr. Monterrubio asked Officer Lucio to ask his uncle to get him an attorney, if he needed one.  Id at 387.  See also Id at 58.  The officer did as he was asked. Sixto, Sr. then told the Mr. Monterrubio to tell the truth and "whoever may fall, you just tell the truth."  "Caigan quien caigan.  Tu digas la verdad," Id at 57.

Though indeed ambiguous, the issue is not as easily resolved as Ms. Cockrell contends. In **Soffar v Johnson**, 237 F.3d 411 (5th Circ. 2000), the Fifth Circuit discussed the issue of invocation of right to counsel.   There, Max Soffar was arrested for capital murder. He was taken to the League City Police Department for questioning.  The Houston authorities secured the cooperation of Sgt. MonterrubioClawson of the Galveston County Sheriff's Office to assist in the interrogation because Soffar considered him a friend.  This friendship was a one way street;

---

[2]. The Court of Criminal Appeals ruled that the information was never given to the police and that Petitioner had simply told his uncle that he wanted him to secure an attorney if he needed one.  "Appellant's request to his uncle and his uncle's response are a private matter involving no state action."  See footnote 6, page 4, Opinion of Court of Criminal Appeals.  The Court was simply wrong.

*Monterrubio Summary Judgment Response*
*October 29, 2001 p.4*

Clawson felt it was his job to get Soffar to talk. 237 F.3d at 427. After two conversations, Soffar

was unwilling to continue the discussion. Clawson returned to the interrogation room where

Soffar asked him whether he, Soffar, should get an attorney or talk to the detectives. Id at 429.

Clawson told Soffar that, if he were guilty, he should talk to the officers; if not, he should get an

attorney. Soffar then asked Clawson how he could get one. Clawson asked Soffar if he could

afford one, and, when learning he could not, Soffar asked how and when he could get a court

appointed attorney. Clawson told him that he, Clawson, did not know Harris County procedures

and that it might take as long as a month. Clawson knew this last statement was untrue. Soffar

then told Clawson, that it looked like that he, Soffar, was on his own. Clawson did not respond

to that last statement. Soffar then talked to the other officers and gave a written confession. Id at

429-30.

The Respondent argues that this case is controlled by **Davis v United States,** 114 S.Ct.

2350 (1994). In **Soffar**, however, the Fifth Circuit ruled that **Davis**, while it altered the prior

Fifth Circuit standard of **Nash v Estelle**, 597 F.2d 513 (5th Circ. 1979) (en banc), it did not

completely usurp its role. **Nash** had limited police authority, when confronted with vague

invocations of the right to counsel, to those questions designed to clarify the vague request for

counsel and **Davis** clearly abrogated that rule.

> Nothwithstanding the applicability of **Davis**, however, we note that **Davis** specifically
> recognized that, while officers are not required to ask *clarifying* questions when they are
> faced with an ambiguous request for counsel, "it will often be good police practice for the
> interviewing officers to clarify whether or not [the suspect] actually wants an attorney."
> **Davis** 114 S.Ct. At 517. Nothing in **Davis** altered our holding in **Nash** that interrogating
> officers who do seek clarification of an ambiguous or equivocal request for counsel. Are
> not permitted "to utilize the guise of clarification as a subterfuge for coercion or
> intimidation." **Nash** 597 F.2d at 517. Nor did **Davis** alter our holding in **Thompson [ v.**

**Wainwright,** 601 F.2d 768 (5th Circ. 1979)] that, when clarifying an ambiguous or equivocal request for counsel, under no circumstances may an officer "mislead [ a suspect] into abandoning his equivocal request for counsel." **Thompson**, 601 F.2d at 772. Indeed, the interpretations of **Miranda** and **Edwards**, set forth in our decisions in . . . **Thompson**, and **Nash**, insofar as they are consistent with **Davis**, . . . and other relevant Supreme Court cases, remain untouched and reaffirmed as circuit precedents.

Thus, the law applicable to Soffar's conviction dictates that, in interrogating officers are confronted with an ambiguous or equivocal request for counsel, under **Davis**, they are not required to cease interrogation.  However, if under **Davis**, the officers exercise good police practice and seek clarification, under this Circuit's holdings in **Nash** and **Thompson,** the officers may not use the clarifying inquiry or their responses to an ambiguous or equivocal request for counsel to coerce, intimidate, or trick the suspect into abandoning his ambiguous or equivocal request for counsel.  Such coercion, intimidation, or trickery in order to get a suspect to abandon an unclear request for counsel is not permitted under **Miranda** or **Davis**, and is explicitly prohibited by **Nash** and **Thompson.**

237 F.3d at 453.

The Court then went on to discuss whether, under the circumstances set forth above, Soffar had made an **unequivocal** request for counsel, a request that should have cut off all police interrogation.  Id at 454.  The standard for the request is clear: "Although a suspect need not speak with the discrimination of an Oxford don,' he must articulate his desire to have counsel present sufficiently clear that a reasonable officer would understand the statement to be a request for an attorney." **Davis**, 114 S.Ct. at 2355.  Given that the court must indulge every presumption against waiver and resolve all doubts in favor of protecting constitutional claims, the court must give a broad, rather than a narrow interpretation of a suspect's request for counsel.  **Soffar v Johnson**, 237 F.3d at 455, citing **Michigan v Jackson**, 475 U.S. 625 (1986).   The Fifth Circuit went on to hold that, given all of these circumstances, Soffar's requests to Clawson constituted an unequivocal request for counsel.

*Monterrubio Summary Judgment Response*
*October 29, 2001 p.6*

In the case at bar, clearly the police sought to use Sixto Monterrubio, Sr. to prevent Jose Monterrubio from continuing his insistence, albeit equivocal, right to counsel. It should have been clear to any police officer that a 17 year old boy was trying to assert his right to counsel. While the police did not resort to trickery, they carefully avoided the issue by not engaging in the kind of good police work recommended in **Davis** and narrowly construing the request for counsel as one limited to a request to Sixto Monterrubio, Sr. to find an attorney. Further the police utilized Sixto's relationship with his nephew in order to induce Jose Monterrubio to provide the police with a confession, rather than honor Jose's request for counsel, or at the least, do no more than that recommended by **Davis** and clarify it to make certain that Jose Monterrubio genuinely under the standards of **Miranda v Arizona**, 385 U.S. 436 (1966), wished to waive his right to counsel.

Because the Court of Criminal Appeals decided this issue based on an incorrect recitation of the facts, this Court is not bound either by the factual findings of that Court or its legal conclusions. **Puckett v Elem**, 514 U.S. 765, 769 (1995) (state court fact findings may be disregarded or set aside if they are not fairly supported by the record);**Parker v Dugger**, 498 U.S. 308, 316-17, 320 323-24 (1991); **Burden v Zant**, 510 U.S. 132, 133 (1994) (per curiam) (state court fact findings disregarded because of manifest mistake). Because theses findings are not binding on the Court, this Court should deny the Respondent's Motion for Summary Judgment and conduct a hearing on these allegations.

### 3. Sufficiency of the Evidence to Support Future Dangerousness

Ms. Cockrell argues that the evidence is sufficient to support the jury's finding of future dangerousness based solely on the facts of the offense. In a different context, the Fifth Circuit

described this argument as a "stereotypical fall back argument." **Gardner v Johnson** ___ F.3d

____ (Fifth Circuit, April 4, 2001).[3]

> [O]ur decades of experience with scores of Section 2254 habeas cases from the death row
> of Texas teach an obvious lesson that is frequently overlooked. Almost without
> exception, the cases we wee in which conviction of a capital crime has produced a death
> sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all
> that is required to offset prejudicial legal error and convert it to harmless error, habeas
> relief based on evidentiary error in the punishment phase would virtually never be
> available, so testing for it would amount to a hollow judicial act. We are satisfied that
> here, Dr. Griffith's testimony cannot conceivably be said to have had no substantial,
> injurious effect on the outcome of the penalty phase of this case: . . .

As the Court noted, to "permit a jury to impose the death sentence solely because the facts are

heinous and egregious would be to return to the days of inflicting capital punishment based on

emotion and revenge, supplanting altogether the questions of deliberateness and future

dangerousness which make the Texas scheme constitutional." This claim should be sustained.

Mr. Monterrubio was only a fews days past his 17th birthday when this offense was committed.

No punishment evidence was introduced by the State: no prior acts of violence or even

misconduct of any kind, no psychiatric evidence, no opinion evidence, in short, nothing other than

the facts of the offense to support the verdict. To allow this verdict to stand would be tantamount

to allowing revenge and emotion to carry the day.

### 4. Ineffective Assistance of Counsel

As alleged in his Petition for Writ of Habeas Corpus, Mr. Monterrubio was deprived of

the effective assistance of counsel at trial. Mr. Monterrubio alleges in his petition that counsel's

---

[3]. The comments of the Fifth Circuit did not address a sufficiency claim as presented here.
There the Court was concerned about a Fifth Amendment violation based on the use of a
psychiatrist at the punishment phase under **Estelle v Smith**. Counsel contends, however, that the
analysis is appropriate here.

performance was deficient for a number of reasons.  Ms. Cockrell takes the position that Mr.

Monterrubio would have to show that each alleged deficiency, standing alone, would be enough

to find ineffective assistance of counsel.  That is not the law.

The standard of review for ineffective assistance of counsel is set out in **Strickland v.**

**Washington,** 466 U.S. 668 (1984) as "whether counsel's conduct so undermined the proper

functioning of the adversarial process that the trial cannot be relied on as having produced a just

result."  The defendant must show that there is a reasonable probability that but for counsel's

mistakes, the result would have been different.  Id.  "Reasonable probability" is defined as "a

probability sufficient to undermine confidence in the outcome."

One of the many errors which Mr. Monterrubio alleges in his writ is that trial counsel did

not request a special venire pursuant to Article 34.01 of the Texas Code of Criminal Procedure.

Ms. Cockrell takes the position that failure to do so was not harmful because the request would

have been denied.  She bases her position on the fact that the Judge denied Defendant's Motion to

Strike the Jury Panel.   Defendant's Motion to Strike the Jury Panel was filed on October 10,

1994, the first day of trial (Clerk's Record p. 275)  It is impossible to say that the Court would

have denied a timely-filed Motion for Special Venire just because it denied a last-minute Motion

to Strike the Jury Panel.

Mr. Monterrubio next alleges that his trial lawyer should not have let Laura Becerra serve

on the jury.  Ms. Becerra testified during voir dire as follows: "As far as that –if he is guilty, then

–then he probably would go to the death penalty, as you're looking for.  But if it's not proven that

he is guilty then we can't do that."  SF-X-220 lines 20-23.  Clearly Ms. Becerra said that if the

Defendant was found guilty she would assess the death penalty and that the only reason she would

not assess the death penalty would be if the Defendant was found not guilty. Not only did

Counsel not challenge Ms. Becerra for cause, but he didn't even try to clarify whether the

prospective juror met the standard set out in **Wainwright v. Witt**, 469 U.S. 412 (1845).

Moreover, having heard that the only way the Defendant would avoid being sentenced to death by

this juror, Defense Counsel did not use a peremptory challenge on her but instead told the Court

that she was acceptable. SF-X-235, line 19. It is hard to imagine how letting a person who has

said that she will assess the death penalty if the defendant is found guilty can be categorized as

"trial strategy" for a defense lawyer. Obviously the failure the exercise a peremptory challenge

was prejudicial to Mr. Monterrubio.

Mr. Monterrubio alleges that his trial counsel failed to voir dire any of the prospective

jurors on punishment issues. The record clearly shows that the only question counsel asked

regarding punishment was whether or not prospective jurors could consider probation in the event

of a conviction for the lesser included offense of murder. Once again Ms. Cockrell takes the

position that this was trial strategy and not ineffective assistance.

It is impossible to fathom what kind of defense trial strategy would cause a lawyer not to

ask questions on voir dire that would lead to intelligent use of peremptory challenges and use of

challenges for cause.

Along the same vein, Mr. Monterrubio alleges that trial counsel was ineffective in that he

did not present any mitigation evidence at punishment. He did not even present the evidence

developed by Mr. Monterrubio's previous lawyer that Officer Pineda, one of the investigating

officers, thought that Mr. Monterrubio was under the domination or control of his cousin Sixto,

the co-defendant. Neither did he present the obvious evidence that Mr. Monterrubio turned 17

years of age a mere ten days before the crime was committed. Once again it is hard to see how this could have been trial strategy.

The final allegation that Mr. Monterrubio makes is that counsel's performance was deficient in that counsel did not object to the introduction of enormous amounts of hearsay testimony, including victim impact testimony at the guilt-innocence phase of the trial. Ms. Cockrell concedes that most of this evidence is inadmissible hearsay but takes the position that trial counsel was just using trial strategy and cannot be faulted for not objecting. She states that as to all the hearsay testimony that came in regarding the victim's relationship with Sixto Monterrubio, counsel was attempting to divert attention and blame from Monterrubio onto his accomplice, which is a valid and sound defense strategy.

One clear indication that the failure to object to the hearsay testimony was negligence and not part of the defense strategy is that at no time during his final argument on guilt/innocence did defense counsel attempt to shift the blame to Sixto Monterrubio. S.F. Vol. XIX, 558-571. In fact during his argument he told the jury "I don't know what Sixto's involvement was here. We are not here to try Sixto." SF-Vol. XIX, 561. These statements clearly show that there was absolutely no strategy employed in not objecting to the hearsay testimony.

For purposes of an ineffective assistance of counsel claim, the reviewing court must look at the whole performance of the lawyer and not just at specific mistakes and must decide if the trial resulted in a verdict worthy of confidence. **Kyles v. Whitley,** 514 U.S. 419, 434 (1995). When the performance of trial counsel is reviewed as a whole, it is impossible to say that the verdict reached in Mr. Monterrubio's case is worthy of confidence.

II. Exhaustion of Remedies

Ms. Cockrell argues that Mr. Monterrubio has failed to present most of these claims to the state courts and thus, the claims cannot be addressed because of the doctrine of exhaustion. While all but two of the claims have not been raised in state court, the two being the invocation of the right to counsel and sufficiency of the evidence to support the finding of future dangerousness, that failure does not end the inquiry.

As an initial matter, Mr. Monterrubio has filed a Motion to Abate, which if granted, would remedy the exhaustion defect. Counsel addresses that issue in his reply response to Ms. Cockrell's opposition to his summary judgment motion.

If this Court, however, denies Mr. Monterrubio's Motion to Abate, then Mr. Monterrubio has no adequate remedy at state law and thus, exhaustion poses no hurdle to this Court's resolution of his claims on the merits. Even if this Court decides that it cannot dismiss this case to allow for exhaustion, there is still no impediment to addressing the issues on their merits. The most obvious exception is the absence of a state corrective process. 28 USC Section 2254(b)(1)(B) excuses exhaustion if, at the time the habeas petitioner files the federal petition, there is no available state procedure to secure review of the unexhausted claim. This exception applies even if at an earlier or later stage of the proceedings a remedy becomes available. See Liebman and Hirtz, Federal Habeas Corpus Practice and Procedure, Section 23.3 p. 987 (Lexis 1998). This exception also applies if the petitioner failed to present the claims at earlier proceedings as Ms. Cockrell is now contending. See **Coleman v Thompson**, 501 U.S. 722, 732 (1991); **Carter v Estelle**, 677 F.2d 427, 444 fn. 13 (5th Circ. 1982).

Further, to require exhaustion would risk destroying Mr. Monterrubio's federal rights, absent some sort of tolling order, before he could return to federal court. In such circumstances,

exhaustion may be excused.  See **Jackson v. Duckworth**, 112 F.3d 878, 881 (7th circ. 1996) (

inordinate delay in state court proceedings excuses exhaustion).

Thus, there exist a number of reasons why exhaustion poses no impediment to this Court's

resolution of the merits of this claim.

V.  Procedural Default

Ms. Cockrell also contends that, again with the exception of the claims about invocation

of right to counsel and sufficiency of the evidence to support future dangerousness, the claims are

procedurally defaulted because they are not presented to the state courts and Mr. Monterrubio

does not meet the standards of a successor state habeas petition under Art. 11.071, Sec. 5,

V.A.C.C.P.

As a preliminary matter, under the theories of **Ex parte Graves**, not yet decided, Mr.

Monterrubio may well meet the standards of successor writs of habeas corpus under state law and

thus, the claims may not be procedurally barred.  As noted in the motion to abate, the Court of

Criminal Appeals has agreed to hear arguments, based on briefs, in **Ex parte Graves** and **Ex**

**parte Etheridge** on the theory that state death sentenced habeas corpus applicants are entitled to

competent and effective advocates.   Should that view prevail, there would exist a state procedure

that could address Mr. Monterrubio's claims and they would not be procedurally defaulted.  It is

for this basis that counsel urged in his Motion to Abate, that should this Court deny the motion, it

should hold these cases pending resolution by the Court of Criminal Appeals of these issues.

If it does not, however, Mr. Monterrubio advances the argument here that he was so

poorly represented in state habeas proceedings as to have had no writ presented at all.  Mr.

Monterrubio was represented by Larry Warner of Brownsville, Texas in that state habeas

proceeding.  Mr. Warner, as Ms. Cockrell notes, filed a three page writ of habeas corpus that alleged on the most skeletal of claims with no factual or legal support offered on any of those allegations.  It is precisely these bare bones allegations that Ms. Cockrell relies upon for her argument that the claims are procedurally defaulted.  See Respondent's Motion for Summary Judgment pp. 9, 11 where the state habeas court defaulted the claims as inadequately presented.

Section 2(a) of Article 11.071, Texas Code of Criminal Procedure, mandates competent counsel for indigent death-sentenced prisoners.  Section 2(a) states "An applicant *shall be* represented by competent counsel unless the applicant has elected to proceed pro se and the convicting trial court finds, after a hearing on the record, that the applicant's election is intelligent and voluntary."  Article 11.071 § 2(a) (emphasis added).  This provision went into effect on September 1, 1995, and applied when Mr. Bruce's state habeas counsel was appointed.

The term "competent" has not been given specific content by the Court of Criminal Appeals.  Webster's New World Dictionary defines it as follows: "1. well qualified; capable; fit. 2. sufficient; adequate. 3. *Law* Legally qualified or fit."  WEBSTER'S NEW WORLD DICTIONARY 154 (David B. Guralnik ed., 2d Concise Edition 1982).  However, a precise definition of "competent" is not critical to the resolution of this case.  By any reasonable definition of the term, the performance of state habeas counsel in this case was not competent.

In *Graves*, the Court of Criminal Appeals has granted submission to decide whether Mr. Graves's state habeas counsel, Patrick McCann, was incompetent in his representation of Anthony Graves, in violation of Mr. Graves' constitutional and statutory rights.  The Court's resolution of *Graves* will bear directly on Mr. Monterrubio's case.

In Texas, claims of ineffective assistance of trial counsel are to be raised by post-

conviction writ of habeas corpus. **Ex parte Torres**, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Therefore, these claims should have been raised by court-appointed state habeas counsel. They were not. Mr. Monterrubio's state habeas counsel not only forfeited Mr. Monterrubio's right to have his claims heard during his initial state habeas proceedings, but also forfeited Mr. Monterrubio's right to have his claims heard during federal habeas review. This performance falls below any objective standard of competence.

The appointment of incompetent counsel was not only a violation of Mr. Monterrubio's statutory right to competent counsel, but also violated Mr. Monterrubio's right to due process under the law as guaranteed by Fourteenth Amendment of the United States Constitution. Although the United States Supreme Court has been clear that there is no protected Sixth Amendment right to counsel under the United States Constitution in state post-conviction proceedings, **Murray v. Giarratano** 492 U.S. 1 (1989), "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution -- and, in particular, in accord with the Due Process Clause." **Evitts v. Lucey**, 469 U.S. 387, 401 (1985). The State of Texas has opted to provide post-conviction review of death sentences under Article 11.071 of its Code of Criminal Procedure, and has guaranteed the appointment of competent counsel under Article 11.071 §2. Since it has chosen to provide these statutory rights, the State of Texas must provide them in accordance with due process. See **Evitts**, 469 U.S. at 387.

The federal courts have long recognized a right to due process in Texas post-conviction proceedings. In **Welch v. Beto**, the United States Court of Appeals for the Fifth Circuit plainly stated this right: "***Having invoked Texas statutes granting post-conviction hearings, Welch***

*had the right to be tried according to the substantive and procedural due process requirements of the Fourteenth Amendment.*" **Welch v. Beto**, 355 F.2d 1016, 1020 (5th Cir.), *cert. denied*, 385 U.S. 839 (1966) (emphasis added). In **Welch**, a death-sentenced inmate requested a post-conviction hearing regarding his sanity to proceed on appeal, pursuant to then TEX. CODE CRIM. PROC. art. 932 (b)§ 3. *See id.* at 1018.[4] He presented, in affidavit form, the evidence of his insanity -- all of which had been presented to the jury at trial. *Id.* at 1018.[5] The state presented no evidence to refute Welch's affidavit, but merely contended that the evidence was the same as that which the jury rejected at trial. *Id.* The trial court refused to hold a hearing before a jury. *Id.*

Although the Fifth Circuit recognized that no new evidence of the inmate's insanity had been produced, the Court held that the judge's failure to hold a hearing in the absence of any evidence presented by the state was a violation of the statute and therefore a violation of due process. The **Welch** Court did not consider whether a new hearing would have been likely to produce a different result, but rather based its grant of relief solely on the denial of process. *Id.*

The United States Supreme Court has also stated that the right to due process extends to state post-conviction proceedings such as Mr. Monterrubio's Article 11.071 proceeding. In **Case v. Nebraska**, 381 U.S. 336, 337 (1965), the Court granted review in a Nebraska case where an

---

[4]     The Texas statute allowed for the empanelment of a jury and a hearing on sanity during a criminal defendant's appeal of a conviction if the judge of the convicting court found a reasonable doubt as to the sanity of the defendant. *See id.* at 1018 n. 2.

[5]     A jury considered Mr. Welch's sanity at his original trial. *Id.* After a psychiatrist testified that Mr. Welch was insane, the state then presented the testimony of the local medical doctor and two lay witnesses who expressed their view that Mr. Welch was sane. The jury found him sane and he was convicted and sentenced to death. *Id.*

inmate challenged his guilty plea and the State of Nebraska's post-conviction remedy did not apply to his case. The Court granted certiorari "to decide whether the Fourteenth Amendment requires that the States afford prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees."*Id.* Although the Court never reached the issue because of an intervening change in the Nebraska statute, the Court's action was a clear recognition of a right to some form of due process.

More recently, in **Ohio Adult Parole Authority v. Woodard**, 523 U.S. 272 (1998), the Court discussed a post-conviction right to due process in the context of clemency proceedings. A plurality of the Court held that there is, at least, a minimal right to due process of law in executive clemency proceedings.[6] Justice O'Connor's concurrence in the case explains that, "although it is true that pardon and commutation decisions have not traditionally been the business of the Courts . . . some minimal procedural safeguards apply to clemency proceedings."*Id.* at 289 (internal citations omitted). The obvious implication of this statement is that matters such as post-conviction habeas proceedings, which are traditionally within the purview of the courts, require a significantly greater attention to due process. Even Justice Rehnquist's opinion announcing the judgment, but joined by only three members of the Court, distinguished clemency from other features of the criminal justice process:

> Clemency proceedings are not part of the trial or even the adjudicatory process. They do not determine guilt or innocence, and are not intended primarily to enhance the reliability of the trial process. They are conducted by the Executive Branch, *independent of direct appeal and collateral relief proceedings.*

---

[6]     Five justices of the United States Supreme Court held that a right to due process in clemency proceedings exists. *See Woodard*, 523 U.S. at 288-89 (O'Connor, J., concurring, joined by Souter, Ginsberg, and Breyer, JJ.);*id.* at 290 (Stevens, J., dissenting).

*Id.* at 284 (emphasis added).  Justice Stevens addressed the question directly in his dissenting

opinion, stating:

> If there could be any question whether state postconviction proceedings are
> subject to due process protections, our unanimous opinion in Yates v. Aiken, [484
> U.S. 211, 217-218, (1988)], makes clear that they are.

*Id.* at 293 n.3.  This review of cases demonstrates the courts' longstanding recognition of a robust

right to due process in state post-conviction proceedings.

 Mr. Monterrubio's due process rights were ignored in the state habeas proceedings.  He

was so abysmally represented that virtually all of his claims, with the exception of those presented

in the direct appeal, were forfeited.  At least one of those claims, the Sixth Amendment right of

cross examination,  would have gotten Mr. Monterrubio a new trial.  There can surely be no

greater more compelling claim to due process than that represented by the instant case.   Ms.

Cockrell's Motion for Summary Judgment should be denied.

Respectfully submitted,


Michael B. Charlton
1744 Norfolk
Houston, Texas 77098
(713) 572 2333
(713) 572 2483 (fax)
State Bar of Texas 04144800
COUNSEL FOR JOSE IGNACIO MONTERRUBIO



_____
Elisa Vasquez
613 19th Street
Galveston, Texas 77550
(409) 763 2131
(409) 763 4104
State Bar of Texas 20502100
COUNSEL FOR JOSE IGNACIO MONTERRUBIO

## CERTIFICATE OF SERVICE

This is to certify that a copy of this Summary Judgment Response was served on opposing

counsel, Tina Dettmer, of the Texas State Attorney General's Office, P.O. Box 12548, Austin,

Texas 78711 by mailing a copy of same on October 29, 2001


Michael B. Charlton