IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 1 4 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JOSE IGNACIO MONTERRUBIO,<br>Petitioner, | §<br>§<br>§ | |
| v. | § | C.A. NO. B-01-112 |
| | § | |
| JANIE COCKRELL,<br>Director, Texas Department of<br>Criminal Justice, Institutional Division<br>Respondent. | §<br>§<br>§<br>§ | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Jose Ignacio Monterrubio ("Petitioner"), a prisoner sentenced to death, has filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry No. 12). Pending before the Court are Janie Cockrell's ("Respondent") motion for summary judgment (Docket Entry No. 18) and Petitioner's motion to abate the proceedings for the exhaustion of state court remedies (Docket Entry No. 15). After considering the pleadings in this case, the record, and the applicable law, the undersigned concludes that Petitioner has not established a right to federal habeas corpus relief. For the reasons outlined below, this Court recommends that Respondent's motion for summary judgment be granted, that Petitioner's motion to abate the proceedings be denied, and that the petition for post-conviction relief be denied.

## BACKGROUND

For the purposes of the matter before the Court, it is only necessary to summarize the underlying facts of this case briefly. Petitioner is in the custody of the Texas Department of Criminal Justice, Institutional Division, pursuant to a judgment and sentence of death from the 107th District Court of Cameron County, Texas. On direct review, the Court of Criminal Appeals summarized the

facts in this case as follows:

> According to the record, the victim, a minor, was a "friend" of appellant's cousin, Sixto, and was accustomed to sneaking out of her parent's home in their company. According to appellant's confession, he and Sixto had to some degree premeditated and planned this crime. As the three rode in Sixto's car in the late night hours of the night of the offense, Sixto and appellant attacked the victim, beating her about the head with a crow-bar. Appellant confessed that he struck the victim with the crow-bar and threatened to hit her again if she did not submit to him and Sixto. Under these threats she submitted. She was stripped and her hands tied with a leather shoelace from appellant's boot. Appellant and Sixto then proceeded to anally, vaginally, and orally sexually assault her throughout the night, driving from location to another so as to avoid being detected. Appellant recounted in his confession that at one point the victim managed to escape from Sixto's car, was quickly apprehended, beaten into submission and dragged back to the car begging for her life. Appellant also recounted that as he raped her, the victim begged for her life, promising that since she was their friend, she would not tell anyone about the incident. Appellant described how he turned up the car radio so the victim's pleas for help could not be heard.

> As morning approached, Sixto and appellant drove the victim, as she begged for her life, to a secluded place. Appellant asserts that he attempted to choked [*sic*] her to death with a towel, but was unable to kill her. They drove to another location, where Sixto unsuccessfully attempted to choke the victim to death. Appellant then stabbed the victim's neck with a pocket knife. As she began to choke on her own blood, appellant and Sixto took turns, trying unsuccessfully to break her neck. Unable to break her neck, they began to beat her. Appellant beat her head with a stick, breaking her jaw. Appellant then retrieved a can of tire-foam from the car for Sixto to spray the foam into the victim's nose and mouth. Still the victim clung to life. Exasperated, Sixto and appellant drove the victim to yet another location. There, appellant took his shirt off, wrapped it around the victim's face and smothered her until she died, ten to twenty minutes later. Appellant and Sixto moved the victim's body several times before they led the police to the decomposed remains.

Opinion on Direct Review ("Opinion") at 4-5.

On October 25, 1993, a jury found Petitioner guilty of murdering fifteen-year-old Carla Villarreal in the course of an aggravated sexual assault. Following a separate punishment hearing, the jury answered the special issues submitted pursuant to Article 37.071(b) of the Texas Code of Criminal Procedure in a manner that required the trial court to assess Petitioner's punishment at

death.[1] The Texas Court of Criminal Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion issued September 11, 1996. *Monterrubio v. State*, No. 72,028 (Tex. Crim. App. Sept. 11, 1996).[2] Petitioner did not seek a writ of certiorari from the United States Supreme Court.

Petitioner filed a state application for habeas relief on April 27, 1997. In his state habeas application, Petitioner raised twenty-one claims. However, Petitioner only presented conclusory

---

[1]    The special issues submitted pursuant to article 37.071 of the Texas Code of Criminal Procedure provided as follows:

### Special Issue No. 1

Is there a probability that the defendant, Jose Ignacio Monterrubio, would commit criminal acts of violence that would constitute a continuing threat to society?

### Special Issue No. 2

Do you find from the evidence beyond a reasonable doubt that Jose Ignacio Monterrubio, the defendant himself, actually caused the death of Carla Villarreal, the deceased, on the occasion in question, or if he did not actually cause Carla Villarreal's death, that he intended to kill Carla Villarreal or another, or that he anticipated that a human life would be taken?

### Special Issue No. 3

Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

Tr. Vol. I-B at 347-50.

[2]    On direct appeal, counsel did not file an appellate brief until ordered to do so by the Court of Criminal Appeals. Even then, Petitioner's arguments on direct appeal did not comprehensively address the legal or factual issues in this case.

3

statements for each claim without providing any legal or factual support. State Habeas Record at 1-15. Petitioner later filed two supplemental applications, but did not further develop the legal or factual basis for his habeas claims. State Habeas Record at 17-24. The Cameron County District Court entered findings of fact and conclusions of law on January 11, 2000, recommending that relief be denied. *See* Order on Defendant's Application for Writ of *Habeas Corpus*, contained in the Supplemental State Habeas Court Record at 41-43. The state habeas court recommended that the Court of Criminal Appeals deny all of Petitioner's habeas claims on procedural grounds. Supplemental State Habeas Record at 42.[3] The Court of Criminal Appeals adopted the lower court's findings and denied Petitioner's request for habeas relief in an unpublished order. *Ex parte Monterrubio*, No. 44,170-01 (Tex. Crim. App. March 8, 2000).

On December 22, 2000, the Court appointed counsel to represent Petitioner in the federal review of his capital conviction. (Docket Entry No. 2). On June 1, 2001, Petitioner filed a skeletal petition which outlined his claims for relief. (Docket Entry No. 8). Petitioner later filed a comprehensive amended petition. (Docket Entry No. 12). Petitioner has also filed a motion to abate the proceedings to allow him to exhaust claims in Texas state court. (Docket Entry No. 15). Respondent has filed a motion for summary judgment (Docket Entry No. 18) and an opposition to the motion to abate (Docket Entry No. 19).

## STANDARDS OF REVIEW

Petitioner filed his initial federal habeas petition on June 1, 2001; the Anti-Terrorism and

---

[3]     Specifically, the trial level habeas court held that "[d]efendant's 21 grounds are not self-proving, and his failure to have properly briefed them effectively prohibits this Court from making an informed decision whether relief is proper," and, thus, the claims were procedurally defaulted. Supplemental State Habeas Record at 42, ¶¶ 5,6.

Effective Death Penalty Act of 1996 ("AEDPA") governs. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998). The AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 2220 (2001). The AEDPA provides that a federal habeas petition shall not be granted with respect to any claim adjudicated on the merits in state court unless it:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2). The AEDPA further provides:

> (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

In *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court reviewed the AEDPA's "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."[4] Under the AEDPA, federal review of a state court determination differs depending on

---

[4]    On April 18, 2000, the Supreme Court issued two separate opinions involving the AEDPA, both originating in Virginia, in which the petitioners had the same surname. *Terry Williams v. Taylor*, 529 U.S. 362 (2000), involves 28 U.S.C. § 2254(d)(1), and *Michael Williams v. Taylor*, 529 U.S. 420 (2000), involves 28 U.S.C. § 2254(e)(2). To avoid confusion, this Court will include the full name of the petitioner when citing these two cases.

whether the issue is one of law, one of fact, or a mixed question of law and fact. *See Williams v. Cain*, 229 F.3d 468, 474 (5th Cir. 2000), *cert. denied*, 122 S. Ct. 72 (2001).

For pure questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 122 S. Ct. 194 (2001). "A state court decision will be 'contrary to' [the Supreme Court's] clearly established precedent if the state court either 'applies a rule that contradicts the governing law set forth in [its] cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Penry v. Johnson*, 121 S.Ct. 1910, 1918 (2001) (quoting *Terry Williams*, 529 U.S. at 406).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Terry Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). "[E]ven if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry*, 121 S. Ct. at 1918; *see also Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001) ("Thus, a state court application may be incorrect in our independent judgment and, yet, reasonable."); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) (stating that the AEDPA

mandates relief in the case of a state court decision "that is not merely wrong but is so wrong that it is 'unreasonable'").

The AEDPA precludes federal habeas relief on questions of fact unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2). The state court's factual findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The AEDPA precludes federal consideration of claims not adjudicated in state court. Under the AEDPA, a federal court cannot grant relief unless a petitioner "has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A).[5] The "exhaustion requirement is grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Deters v. Collins*, 985 F.2d 789, 794 (5th Cir. 1993) ("[I]f . . . an issue rests upon unresolved questions of fact or of state law, comity and judicial efficiency may require federal courts to insist on complete exhaustion to ensure that the court has a complete record to review.").[6] "The requirements of the exhaustion concept are simple: An applicant must fairly

---

[5]    However, a court may deny a habeas petition containing unexhausted claims. *See* 28 U.S.C. § 2254(b)(2).

[6]    The Supreme Court has recognized that

[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an
(continued...)

apprise the highest court of his state of the federal rights which were allegedly violated." *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S. Ct. 329 (2001). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted). Rather, "the habeas petitioner must have fairly presented to the state courts the 'substance' of his federal habeas corpus claim." *Id.* Exhaustion also requires that a petitioner present material factual support to the state courts before federal habeas relief is available. *See Barrientes v. Johnson*, 221 F.3d 741, 761 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001); *Dowthitt v. Johnson*, 230 F.3d 733, 745-46 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Dispensa v. Lynaugh*, 847 F.2d 211, 217 (5th Cir. 1988); *Joyner v. King*, 786 F.2d 1317, 1319-20 (5th Cir.), *cert. denied*, 479 U.S. 1010 (1986).

The procedural-default doctrine may also bar federal review of a claim. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The Supreme Court has noted that

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review

---

[6]    (...continued)
opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quotations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).

of the claims is barred unless the prisoner can demonstrate cause for the default and
actual prejudice as a result of the alleged violation of federal law, or demonstrate that
failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.[7] "This doctrine ensures that federal courts give proper respect to state

procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at

750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451

(2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and

federalism").

A claim may also be procedurally defaulted where it has not been reviewed by the state

courts. *See Horsely v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999). "A procedural default . . . occurs

when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would

be required to present his claims in order to meet the exhaustion requirement would now find the

claims procedurally barred.'" *Nobles*, 127 F.3d at 420 (quoting *Coleman*, 501 U.S. at 734 n.1).

Texas courts considering unexhausted claims on a successive habeas petition would find them

procedurally barred. Article 11.071 § 5(a) of the Texas Code of Criminal Procedure prohibits a

Texas court from considering a successive habeas petition on the merits unless the petition satisfies

one of the narrow exceptions set forth in § 5(a)(1), (2), or (3).[8] The Fifth Circuit has held that article

---

[7]    The fundamental miscarriage of justice exception requires a showing of actual innocence.
*See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Petitioner makes no effort to show that
he is innocent of capital murder.

[8]    TEX. CODE CRIM. PRO. art. 11.071 § 5 provides:

    (a)    If a subsequent application for a writ of habeas corpus is filed after filing an initial
    application, a court may not consider the merits of or grant relief based on the
    subsequent application unless the application contains sufficient specific facts
    establishing that:

    (continued...)

9

11.071 is an adequate state procedural bar, finding that the rule is strictly and regularly enforced. *See Barrientes*, 221 F.3d at 759; *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir.), *cert. denied*, 523 U.S. 1113 (1998). "[T]he procedural bar that gives rise to exhaustion . . . prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *see also Coleman*, 501 U.S. at 750; *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir.), *cert. denied*, 527 U.S. 1059 (1999).

The Court will consider the instant petition in light of the above-stated standards.

## ANALYSIS

Petitioner raises four claims in his habeas petition:

1.  Appellate counsel rendered ineffective assistance under the Sixth Amendment by:

    (a)  failing to raise a claim that the introduction of a co-perpetrator's confession violated his Sixth Amendment right to cross-examination and confrontation; and

    (b)  failing to raise a claim based on the introduction of one witness' hearsay testimony.

---

[8]    (...continued)

    (1)  the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

    (2)  by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

    (3)  by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

2.   Trial counsel rendered ineffective assistance under the Sixth Amendment by failing to:

   (a)   object to the use of an improper venire;

   (b)   challenge potential juror Laura Becerra for cause;

   (c)   question potential jurors during voir dire about future dangerousness and mitigation;

   (d)   object to "substantial amounts" of hearsay testimony; and

   (e)   present evidence at the punishment phase of co-perpetrator Sixto Monterrubio's control over him and expert testimony concerning the likelihood of future acts of violence.

3.   The State violated his Fifth Amendment right against self-incrimination when the police failed to recognize his invocation of the right to counsel.

4.   Insufficient evidence supported the jury's answer to the future dangerousness special issue.[9]

Respondent argues that federal procedural law prevents the consideration of all but the insufficiency-of-the-evidence claim.   Respondent contends that the ineffective-assistance-of-appellate-counsel claim has never been presented to the state courts.   While Petitioner presented an ineffective-assistance-of-trial-counsel claim on state post-conviction review, Respondent argues that his state court presentation did not raise the issues presented in this forum.   Respondent also argues that the Court of Criminal Appeal's procedural dismissal of the Fifth Amendment claim prevents review of its merits.   Finally, Respondent argues that sufficient evidence supported the jury's determination that Petitioner would be a future danger to society.

Petitioner acknowledges the procedural deficiencies in his claims, but provides several

---

[9]   Petitioner presents his grounds for relief in narrative form without legal argument. The Court assumes that the list above covers all of the legal claims presented in the petition.

11

arguments to allow for their substantive consideration.[10] The Court will first review the procedural hurdles that hamper federal review of his claims. Next, the Court will consider Petitioner's arguments that would support a substantive review. The Court will then analyze the merits of those claims which are properly presented under federal law.

## I.    PROCEDURALLY-DEFICIENT CLAIMS

Respondent contends that almost all of Petitioner's claims are unexhausted or procedurally barred. The Court will discuss the application of these procedural defenses to each of Petitioner's claims.

### A.    Ineffective-Assistance-of-Appellate-Counsel Claim

Petitioner contends that appellate counsel rendered ineffective assistance by failing to raise two issues before the Court of Criminal Appeals: (1) that he was denied his right to cross-examination and confrontation when the State introduced the confession of Sixto Monterrubio, and (2) that the trial court erred in allowing hearsay testimony at trial. Respondent argues that this claim is unexhausted as Petitioner failed to raise it in state court. Petitioner did not present this claim, or any related issue, to the Court of Criminal Appeals.[11] Unquestionably, when a petitioner fails to raise

---

[10]    Specifically, Petitioner recognizes that "all but two of the claims have not been raised in state court, the two being the invocation of the right to counsel and sufficiency of the evidence to support the finding of future dangerousness." (Docket Entry No. 24 at 12).

[11]    Petitioner concedes that this claim is unexhausted. (Docket Entry No. 24 at 12). On state post-conviction review, Petitioner presented two brief claims that appellate counsel rendered ineffective assistance in failing to properly challenge the sufficiency of the evidence on appeal. State Habeas Record at 5-6. Those claims are dissimilar to those raised in the current petition. At any rate, the state procedurally barred those ineffective-assistance-of-appellate-counsel claims, a procedural limitation this Court must respect on federal habeas review. Supplemental State Habeas
(continued...)

a claim in state court, his claim is considered unexhausted. The Court cannot grant habeas relief on an unexhausted claim. *See* 28 U.S.C. § 2254(b).

Respondent contends that Petitioner would not be able to raise this claim in a successive state habeas application, thus resulting in a federal procedural bar of his claims. *See Horsely*, 197 F.3d at 137 (finding that a claim is procedurally barred when a petitioner "failed to exhaust his state court remedies and the state court to which he would present his unexhausted claim would not find those claims to be procedurally barred"). Article 11.071 § 5 of the Texas Code of Criminal Procedure would prevent Petitioner from asserting this new claim in a subsequent state application, rendering his claim procedurally barred in federal court.

### B.    Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel rendered ineffective assistance. Citing several specific areas of alleged misconduct, Petitioner maintains that his counsel did not represent him in a manner consistent in the Sixth Amendment. Respondent argues that Petitioner has failed to fairly present his ineffective-assistance-of-trial-counsel claim to the state courts, contending that Petitioner's claim in his federal petition exceeds the parameters of his claim on post-conviction review.[12] Also, Respondent relies on a state procedural bar, insofar as the claim has been exhausted.

On state habeas review, petitioner presented a claim that "[t]he applicant was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Section 10 of the Texas Constitution, in that he was denied the ineffective assistance of

---

[11]    (...continued)
Record at 42.

[12]    Petitioner also concedes that this claim is unexhausted. (Docket Entry No. 24 at 12).

13

counsel during both the guilt and punishment phases of trial." State Habeas Record at 10.

Petitioner, however, did not present any factual or legal basis for this assertion. Petitioner did not

alert the state court to his current claim involving at least five areas in which trial counsel rendered

ineffective assistance. Petitioner, therefore, did not provide the state court with a "'fair opportunity'

to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson*,

459 U.S. at 6-7 (quoting *Picard v. Connor*, 404 U.S. 270, 27-77 (1971)) .

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts

if it is to satisfy the 'fairly presented' requirement." *Whitehead v. Johnson*, 157 F.3d 384, 386 (5th

Cir. 1998). The Fifth Circuit "has consistently held that a federal habeas petitioner has failed to

exhaust his state remedies when he relies on a different legal theory than he did in state court or

when he makes the same legal claim to a federal court but supports the claim with factual allegations

that he did not make to the state courts." *Dispensa*, 847 F.2d at 217; *see also Nobles*, 127 F.3d at

420-22 (finding no fair presentation to state court "if the prisoner presents new legal theories or

factual claims in his federal habeas petition"). Petitioner's vague proclamation of a Sixth

Amendment claim in state court would not alert the state court to the specific claims asserted on

federal review. "[T]o hold that vague references to such expansive concepts . . . fairly present, and

therefore exhaust, federal claims is to eviscerate the exhaustion requirement." *Wilder v. Cockrell*,

274 F.3d 255, 260 (5th Cir. 2001).

Petitioner's failure to present the basis for this claim to the state courts would render it

unexhausted in this forum. As Petitioner could not renew his ineffective-assistance claim in state

court due to the constraints of Article 11.071 §5, his claim is procedurally barred in federal court.[13]

### C.     Fifth Amendment Claim

Petitioner claims that the State violated his Fifth Amendment protection against self-incrimination by interrogating him after he invoked his right to counsel. On direct review to the Court of Criminal Appeals, Petitioner argued that the trial court erred in admitting his confession into evidence because the State ignored his request for an attorney.[14] The Court of Criminal Appeals held that Petitioner failed to identify the specific legal theory upon which he based his contention. The Court of Criminal Appeals procedurally dismissed his claim based on former Texas Rule of Appellate Procedure 74(f).[15] Specifically, the Court of Criminal Appeals noted that "[a]ppellant's general assertions that his right to counsel was violated is inadequate briefing because it leaves this Court guessing as to appellant's factual and legal argument and would require us to make sua sponte arguments for appellant. We will not brief an appellant's case for him." Opinion at 6. Respondent contends that this procedural dismissal should bar consideration of the merits of the claim on federal review.

The Court of Criminal Appeals dismissed this claim on procedural grounds. Tex. R. App.

---

[13]     Further, the state habeas court procedurally dismissed Petitioner's superficially-presented ineffective-assistance-of-trial-counsel claim. Supplemental State Habeas Record at 42, ¶¶ 5-6. Even if Petitioner's expansion of the Sixth Amendment claim on federal review did not render it unexhausted, the state habeas court's exercise of its procedural law would bar federal review of his claim unless Petitioner demonstrates cause and prejudice. Accordingly, both the exhaustion and the procedural bar doctrines prevent federal review of this claim.

[14]     Specifically, Petitioner provided a page of general legal principles relating to confessions before stating "[i]n the case at bar, Appellant testified that he told Officer Sam Lucio 'Hey, I think I'm in some serious trouble here. I need a lawyer . . .' However, the interrogation and interviews were not terminated by the police officers." Appellant's Brief on Direct Appeal, at 9-10.

[15]     This appellate rule has been renumbered as Rule 38.1(h).

P. 74(f) provided as follows:

> A brief of the argument may present separately or grouped the points relied upon for reversal. The argument shall include: (1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. If complaint is made of any part of the charge given or refused, such part of the charge shall be set out in full. If complaint is made of the improper admission or rejection of evidence, the substance of such evidence so admitted or rejected shall be set out with references to the pages of the record where the same may be found. Repetition or prolixity of statement or argument must be avoided. Any statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party.

Texas courts have relied on this provision to dismiss inadequately-presented claims for many years. A petitioner bears the burden of showing the inadequacy of a state procedural rule. *See Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999) (finding that the doctrine of procedural default in a § 2254 action "presumes that a state procedural ground is adequate and independent . . . and ordinarily, the burden is on the habeas petitioner to demonstrate otherwise."), *cert. denied*, 528 U.S. 1145 (2000); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) ("We presume the adequacy and independence of a state procedural rule when the state court expressly relies on it . . . ."). Petitioner does not argue that the rule has not been consistently applied, and Court can find no evidence that it has not been. As the Court of Criminal Appeals barred consideration of Petitioner's claims under an independent and adequate procedural rule, Petitioner's claim is therefore subject to a procedural bar in this Court.[16]

---

[16]    Respondent also argues that Petitioner failed to exhaust this claim in state court. On direct review, Petitioner based his Fifth Amendment claim on the direct assertion of his right to counsel to a police officer. Appellant's Brief on Direct Appeal, at 9-10. In this forum, Petitioner similarly argues that his "Fifth Amendment right against self incrimination was violated when the police failed to recognize his invocation of the right to counsel." (Docket Entry No. 12 at 9). Petitioner now bases his Fifth Amendment claim on his allegation that he told a police officer to ask his uncle to
(continued...)

## II.    PETITIONER'S ARGUMENTS TO ALLOW CONSIDERATION OF HIS CLAIMS

Recognizing his failure to fairly present his claims, Petitioner makes several attempts to overcome the resultant procedural bar in this forum. First, Petitioner asks this Court stay his case while he exhausts these claims, along with other grounds for relief, in state court. Further, Petitioner contends that the absence of state corrective processes renders exhaustion unnecessary in this case. Finally, Petitioner alleges that irregularities in his state habeas court representation should constitute cause to forgive the procedural bar. Petitioner, however, has not demonstrated circumstances that would surmount the procedural bar of his claims.

### A.    Abeyance

Petitioner filed a motion to abate these proceedings to allow for the exhaustion of state remedies. (Docket Entry No. 15). In his summary judgment response, Petitioner contends that abeyance would allow him to resolve his procedurally-deficient claims in state court, permitting their subsequent renewal in this forum. Petitioner premises his abatement argument on the alleged ineffective assistance of his state habeas counsel. According to Petitioner, state habeas counsel represented him in a manner inconsistent with the Sixth Amendment and the Texas constitution. Petitioner hopes that the Court of Criminal Appeals will recognize a right to effective habeas

---

[16]    (...continued)

get him an attorney if he needed one, to which his uncle told him to tell the truth. (Docket Entry No. 12). In a footnote, the Court of Criminal Appeals recognized this statement to his uncle and found no constitutional violation. This brief review by the Court of Criminal Appeal does not evince a fair presentation of the claim in state court. Instead, the opinion suggests that the Court of Criminal Appeals *on its own initiative* considered the only ascertainable basis for a viable Fifth Amendment claim. This alternative ruling does not diminish the strength of the procedural bar. *See Harris v. Reed*, 489 U.S. 255, 263 n. 12 (1989). Further, the fact that the Court of Criminal Appeals raised this issue without briefing by Petitioner highlights his failure to fairly present that claim. The Court would also find Petitioner's claim to be unexhausted, and as a result, subject to a procedural bar.

representation, allowing him to present a successive habeas application to the Court of Criminal Appeals on that basis.[17]

A federal district court has discretion to abate a petition containing unexhausted claims. *See Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999) (recognizing a district court's discretion to abate habeas proceedings); *Brewer v. Johnson*, 139 F.3d 491 (5th Cir. 1998) ("The district court clearly had authority to either abate or dismiss the action."); *Johnson v. Texas*, 878 F.2d 904, 906 (5th Cir. 1989) (treating a § 1983 action as a § 2254 action and affirming the district court's decision to hold the action in abeyance pending exhaustion). The Fifth Circuit, however, has suggested that unexhausted claims generally should be dismissed without prejudice rather than abated. *See Graham v. Johnson*, 168 F.3d 762, 778 (5th Cir. 1999) (rejecting the argument that "abatement of an application containing unexhausted claims is generally an acceptable substitute for dismissal"), *cert. denied*, 529 U.S. 1097 (2000). In a pre-AEDPA case, the Supreme Court found that a court should dismiss unexhausted claims instead of pursuing abatement "absent special circumstances." *Slayton v. Smith*, 404 U.S. 53, 54 (1971). As previously noted, Texas' procedural law would prevent the filing of a subsequent application on the unexhausted claims in this petition. Dismissal for exhaustion purposes is not a viable avenue for relief in this case. The Court must determine whether the circumstances in this case require that it be held in abeyance based on his extra-petition claim involving habeas counsel's representation.

In *Ex parte Graves*, __ S.W.3d __, 2002 WL 4528 (Tex. Crim. App. Jan. 2, 2002), the Court of Criminal Appeals recently considered if ineffective representation by habeas counsel would give

---

[17]   There is no dispute that, absent a viable ineffective-assistance-of-habeas-counsel claim, Petitioner would be unable to present a successive application based on the claims in his petition.

rise to a cognizable habeas corpus claims and if such assistance would allow the filing of a successive habeas application under article 11.071 § 5. The Court of Criminal Appeals refused to recognize a right to effective habeas representation in *Ex parte Graves*. Characterizing the appointment of counsel in habeas actions as a "legislative act of grace," the Court of Criminal Appeals found that

> neither the United States Supreme Court nor [the Court of Criminal Appeals] has ever held that a habeas petitioner has a federal or state constitutional right to counsel in a habeas proceeding. Absent such a constitutional right to counsel, there can be no constitutional right to effective assistance of counsel in a habeas proceeding.

*Id.* at *5. Concomitantly, the Court of Criminal Appeals refused to recognize ineffective habeas representation as a circumstance that would allow the presentation of a successive habeas application. In refusing to allow a subsequent application based on the actions of habeas counsel, the Court of Criminal Appeals stated:

> If we were to accept applicant's premise--an allegation of a right to statutorily "competent" counsel in one habeas corpus proceeding is cognizable on a subsequent writ application--the entire concept of the finality of a criminal conviction would fall by the wayside. There must come a time when a criminal conviction is final, when the deterrent effects of certainty and immediacy of punishment outweigh the prisoner's right to endlessly litigate new claims. The Texas Legislature has balanced the rights of a convicted death row inmate to seek collateral review of possible violations of his constitutional rights at trial against society's legitimate interest in finality of judgments. The Legislature has explicitly set those limits at one full and fair opportunity to present all such claims in a single, comprehensive post-conviction writ of habeas corpus, except for those rare exceptions outlined in section 5 of 11.071. We are not free to judicially disrupt that carefully crafted legislative scheme.

*Id.* at *8. Accordingly, the Court of Criminal Appeals refuses to allow the presentation of successive habeas applications based on allegations of habeas counsel's inadequate representation.

The Court of Criminal Appeal's recent decision in *Ex parte Graves* effectively forecloses Petitioner's quest to seek successive habeas relief in the Texas courts based on the allegations in his

motion to abate. Consequently, this Court will recommend that his motion to abate the proceedings be denied. Abatement cannot help Petitioner surmount the federal bar of his procedurally-defaulted claims.[18]

### B.    Absence of State Corrective Process

Recognizing the Court's discretion in granting abatement, Petitioner also argues that exhaustion should provide no hurdle to the consideration of his claims. Petitioner contends that the AEDPA "excuses exhaustion if, at the time the habeas petitioner files the federal petition, there is no available state procedure to secure review of the unexhausted claim." (Docket Entry No. 25 at 12). According to Petitioner, Texas' certain refusal to consider his unexhausted claims in a subsequent application leaves the state procedure ineffective to protect his rights.

28 U.S.C. § 2254(b) provides as follows:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

---

[18]    On the same day the Court of Criminal Appeals decided *Ex parte Graves*, the Court of Criminal Appeals decided another case involving the ability to file successive habeas applications in Texas state courts. In *Ex parte Kerr*, 64 S.W.3d 414 (Tex. Crim. App. 2002), the prisoner filed an initial habeas application that did not attack his conviction or sentence. Rather, his counsel filed a brief attacking Texas' habeas corpus scheme. The Court of Criminal Appeals held that "the timely filed document submitted by applicant's original habeas counsel was not 'a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death.'" *Id.* at 421. Accordingly, the Court of Criminal Appeals allowed the prisoner to file an application that would challenge his confinement. In doing so, the Court of Criminal Appeals did not fault the prisoner's original habeas counsel, instead the court focused on the actual effect of original application and found that it did not comply with the traditional role of habeas review. In this case, Petitioner "advances the argument here that he was so poorly represented in state habeas proceedings as to have had no writ presented at all." (Docket Entry No. 25 at 13). This allegation, however, would not allow for the presentation of a subsequent state application under *Ex parte Kerr*. Petitioner's state application, while not comprehensive, still raised issues involving the constitutionality of his conviction and sentence. Unlike the prisoner in *Ex parte Kerr*, Petitioner filed a state habeas application that complied with the traditional basis for habeas corpus review, however superficial that application may have been.

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)(i)   *there is an absence of available State corrective process*; or

    (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

(emphasis added). Under pre-AEDPA law, a "futility exception" to the exhaustion doctrine existed where a petitioner was not required to exhaust state remedies if an attempt to exhaust state remedies would be futile. "The futility exception appears to be derived from the language of pre-AEDPA § 2254(b) (habeas relief shall not be granted unless it appears that petitioner has exhausted state remedies 'or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner')." *Jones v. Jones*, 163 F.3d 285 (5th Cir. 1998), *cert. denied*, 528 U.S. 895 (1999). The Fifth Circuit has not determined whether or not the futility doctrine survived the passage of the AEDPA. *See id.* at 299. The Fifth Circuit, however, has assumed that the language in 2254(b)(1)(B) echos the prior futility doctrine. *See id.*

While it is evident that Texas will not consider Petitioner's claims in a successive habeas application, this does not automatically guarantee federal review of his claims. The Supreme Court has recognized that exhaustion "is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" *Gray*, 518 U.S. at 161-62 (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *see also Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). One court has noted

[t]his apparent salve, however, proves to be cold comfort to most petitioners because it has

been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted.

*Aparicio v. Artuz*, 269 F.3d 78, 90 (2nd Cir. 2001) (quoting *Coleman*, 501 U.S. at 735 n. 1); *see also Lines v. Larkins*, 208 F.3d 153, 160 (3rd Cir. 2000) ("'[A]n absence of available State corrective process' does not mean that a federal court may, without more, proceed to the merits."), *cert. denied*, 531 U.S. 1082 (2001). Indeed, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 162. In other words, Petitioner's reasoning fails because his new claims "are 'technically' exhausted because, and only because, [Petitioner] allowed his state law remedies to lapse without presenting his claims to the state courts . . . [,] there is no substantial difference between nonexhaustion and procedural default." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998); *see also Jones*, 163 F.3d at 285.

The fact that article 11.071 § 5 would now bar the unexhausted claims in the current petition does not guarantee federal review of those claims. The procedural default that occurs because Petitioner did not adequately present these claims earlier requires him to demonstrate cause and prejudice to allow consideration of his claims in federal court. As discussed in the section that follows, Petitioner has not shown cause or prejudice.

## C.    Ineffective Assistance of Habeas Counsel as Cause

In order to avoid the procedural bar of his claims, Petitioner seeks to show "cause" allowing

federal review.[19] Petitioner claims that the ineffective assistance of habeas counsel should allow the consideration of his claim in federal court. Also, Petitioner contends that state habeas counsel's representation violated his due process rights because of its non-compliance with Texas' habeas representation statute. As discussed below, neither of these allegations allow for federal review of his claims.

The Court would first note that Petitioner has not presented his allegations of habeas counsel's ineffective assistance to the state courts (nor could he, as noted above, due to the Court of Criminal Appeals' determination in *Ex parte Graves*). A procedurally-defaulted claim cannot serve a "cause" for another barred claim absent a separate showing of cause and prejudice. *See Edwards*, 529 U.S. at 451 ("In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim.").

Further, ineffective assistance of habeas counsel claims are not cognizable under the AEDPA. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Even before the enactment of the AEDPA, the Supreme Court recognized that "[t]here is no constitutional right to an attorney in state postconviction proceedings." *Coleman*, 501 U.S. at 752. *See also Murray v. Giarratano*, 492 U.S. 1 (1989) (finding no constitutional right to appointed counsel in capital cases on state post-conviction review); *Pennsylvania v. Finley*, 481 U.S. 551, 555 ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). "Because a petitioner does not have a constitutional right to counsel in post-conviction

---

[19]    The Court would note that Petitioner has made no effort to show "prejudice." This deficiency alone would be sufficient to bar a review of his claims. *See Murray*, 477 U.S. at 494-95 (holding that habeas petitioner must demonstrate *both* cause and prejudice to overcome procedural default).

23

habeas proceedings, it follows that a petitioner cannot claim ineffective assistance of counsel in such proceedings." *Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995), *cert. denied*, 516 U.S. 1120 (1996); *see also In re Goff*, 250 F.3d 273, 275 (5th Cir. 2001) ("The Supreme Court has explicitly held that there is no protected Sixth Amendment right to counsel in state post-conviction proceedings."); *Beazley*, 242 F.3d at 271 (finding claims involving representation during state habeas review to be barred by the AEDPA); *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir.) (finding that "infirmities in state habeas proceedings are not proper grounds for federal habeas relief"), *cert. denied*, 532 U.S. 1070 (2001). As there is no constitutional right to habeas representation, the Fifth Circuit has held that ineffective assistance of habeas counsel cannot serve as cause. *See Martinez v. Johnson*, 255 F.3d 229, 240 (5th Cir. 2001) (finding that "ineffectiveness of habeas counsel cannot provide cause for a procedural default"), *cert. denied*, __ S. Ct. __ (2002); *In re Goff*, 250 F.3d at 276 (recognizing that the Supreme Court "has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding"); *Jones*, 171 F.3d at 277 ("The law is well-established, however, that such error committed in a post-conviction application, where there is no constitutional right to counsel, cannot constitute cause."); *Callins v. Johnson*, 89 F.3d 210, 212 (5th Cir.), *cert. denied*, 519 U.S. 1017 (1996) (finding that "no error by habeas counsel can ever constitute cause for abusing the writ"). Accordingly, § 2254 prevents any statutory entitlement to competent habeas counsel from being proper grounds to give procedural bar.[20]

Petitioner also claims that the representation of state habeas counsel violated not only the

---

[20]    In his motion to abate, Petitioner concedes that habeas counsel's representation cannot serve as cause to overcome procedural bar. (Docket Entry No. 15 at 8).

Sixth Amendment, but also the guarantees afforded by due process. Petitioner contends that the mandatory appointment of counsel by Texas courts creates a due process entitlement to effective habeas representation. The Fifth Circuit recently rejected a similar claim in *Martinez v. Johnson*, 255 F.3d 229, 245-46 (5th Cir. 2001). In *Martinez*, the Fifth Circuit found that due process claims based on habeas counsel's representation are barred by § 2254(i). *Id.* As in *Martinez*, Petitioner has not provided this court "with any argument regarding why the due process argument rests on anything other than the incompetence of [counsel] during state post-conviction proceedings." *Id.*[21] The due process nuance of Petitioner's ineffective habeas representation argument is foreclosed by precedent.

For the reasons explained above, Petitioner has not shown circumstances that would allow the consideration of his procedurally-barred claims.[22] Those claims, therefore, should be dismissed.

---

[21]    Petitioner argues that the Fifth Circuit's opinion in *Welch v. Beto*, 355 F.2d 1016, 1020 (5th Cir.), *cert. denied*, 385 U.S. 839 (1966), requires this Court to recognize a due process right to competent post-conviction counsel. In *Welch*, the Fifth Circuit stated that "[h]aving invoked Texas statutes granting post-conviction hearings, *Welch* had the right to be tried according to the substantive and procedural due process requirements of the Fourteenth Amendment." *Id.* The Fifth Circuit, however, recently explained the influence of the *Welch* decision as follows:

> While the *Welch* holding does hint at some form of due process right once a state decides to provide a non-constitutionally obligated service, the Supreme Court has spoken quite explicitly on this subject since *Welch* and has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding. To that extent, at least, *Welch* has been overruled and is no longer valid law in this circuit.

*In re Goff*, 250 F.3d at 276. The Fifth Circuit has foreclosed Petitioner's arguments based on *Welch*.

[22]    This Court's legal determinations concerning the procedural bar, however, should not be read to endorse the level of representation on direct appeal or post-conviction review. Had Petitioner's claims been zealously presented in state court, it is possible that this Court would not be prevented from reaching the merits.

The only procedurally-proper claim presented in Petitioner's federal action, therefore, is his claim that the evidence was insufficient to support the jury's answer to the future dangerousness special issue.

## III.    SUFFICIENCY OF THE EVIDENCE

Petitioner contends that the evidence at trial would not allow a reasonable jury to find that he would be a future danger to society. Petitioner argues that, however brutal the murder may have been, other factors detract from a reasonable jury finding that he would be a future threat. Specifically, Petitioner highlights his youth at the time of the murder, his previously-unblemished criminal record, and the lack of psychiatric evidence of future threat.[23] Petitioner asks this Court to declare that insufficient evidence supported the jury's answer to the future dangerousness special issue.

In determining the sufficiency of the evidence, this Court asks "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.) (applying the *Jackson* standard in the capital context), *cert. denied*, 531 U.S. 849 (2000). In determining the sufficiency of the evidence, this Court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution. *See Jackson*, 443 U.S.

---

[23]    The Court would note that these are factors a jury would normally consider under the mitigation special issue, as well as the future dangerousness special issue. Petitioner does not ask this Court to evaluate the jury's answer to the mitigating special issue. Both the Fifth Circuit and the Court of Criminal Appeals have refused to consider whether sufficient evidence supports the jury's determination regarding mitigating evidence. *See Hughes v. Johnson*, 191 F.3d 607, 623 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000); *Green v. State*, 934 S.W.2d 92, 107 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997).

at 319; *Miller*, 200 F.3d at 286 ("This Court examines all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the issue in controversy to have been proven beyond a reasonable doubt."). In applying the *Jackson* standard, "a federal habeas court refers to the state's criminal law for the substantive elements of the offense." *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000).[24] On direct review, the Court of Criminal Appeals found there to be sufficient evidence supporting the "future dangerousness" special issue. This Court will review that determination under the AEDPA.

Under Texas law, the circumstances surrounding a crime may alone have been sufficient to uphold a jury's finding on the future dangerousness special issue. *See Dinkins v. State*, 894 S.W.2d 330, 358 (Tex. Crim. App.) (*en banc*), *cert. denied*, 516 U.S. 832 (1995); *Kunkle v. State*, 771 S.W.2d 435, 449 (Tex. Crim. App. 1986) (*en banc*), *cert. denied*, 492 U.S. 925 (1989). Evidence of the crime is sufficient so long the Court finds the "circumstances to be so heinous as to display a 'wanton and callous disregard for human life.'" *Dickens*, 894 S.W.2d at 358 (quoting *Deeb v. State*, 815 S.W.2d 692, 703 (Tex. Crim. App. 1991)). The Court of Criminal Appeals has described the review of the future dangerousness issues as follows:

we first look at the facts of the crime itself. If the offense was shown to be sufficiently cold-

---

[24]    There is some question of whether a federal habeas court can review the sufficiency of the evidence supporting the jury's answers to the special issues. *See Hughes*, 191 F.3d at 619. The Fifth Circuit and the Supreme Court have not decided whether the Constitution requires a habeas court to review the evidence to support the special issues to determine its sufficiency. *See id.* However, the Fifth Circuit has "on several occasions addressed the merits of challenges to the sufficiency of evidence supporting a jury's answers to special issues at the penalty phase of a death penalty trial." *Id.*; *see, e.g.*, *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994); *Johnson v. Collins*, 964 F.2d 1527, 1530-31 (5th Cir.), *cert. denied*, 505 U.S. 1235 (1992); *Fierro v. Lynaugh*, 879 F.2d 1276, 1280 (5th Cir.1989), *cert. denied*, 494 U.S. 1060 (1990); *Evans v. McCotter*, 790 F.2d 1232, 1242-43 (5th Cir. 1985), *cert. denied*, 479 U.S. 922 (1986). Accordingly, this Court will review the merits of Petitioner's sufficiency-of-the-evidence claim.

blooded or calculated, then the facts of the offense alone may support a finding that the defendant will pose a continuing threat to society. If, however, the facts of the case were not sufficiently compelling, we look for other evidence to support the jury's finding, such as psychiatric evidence, character evidence, prior criminal record, prior extraneous offenses, and possible mitigating factors such as the defendant's youth or state of mind at the time of the offense.

*Kunkle*, 771 S.W.2d at 449. The Fifth Circuit has approvingly cited the Texas rule concerning the review of the future-dangerousness question. *See Martinez*, 255 F.3d at 245.[25]

In Petitioner's case, the Court of Criminal Appeals found that the circumstances of the

---

[25]     The Court recognizes that the Fifth Circuit, in the context of a harmless-error discussion, recently criticized

the State's stereotypical fall-back argument [finding ] that the heinous and egregious nature of the crime would have ensured assessment of the death penalty even absent the psychiatric testimony about future dangerousness--cannot carry the day here. First, that argument cannot prevail without eviscerating the Supreme Court-approved Texas "special issues" scheme. To permit a jury to impose the death sentence solely because the facts are heinous and egregious would be to return to the days of inflicting capital punishment based on emotion and revenge, supplanting altogether the questions of deliberateness and future dangerousness which make the Texas scheme constitutional. . . . Finally, our decades of experience with scores of § 2254 habeas cases from the death row of Texas teach an obvious lesson that is frequently overlooked: Almost without exception, the cases we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief based on evidentiary error in the punishment phase would virtually never be available, so testing for it would amount to a hollow judicial act.

*Gardner*, 247 F.3d at 563. The analysis that accompanies this insufficiency claim differs from the situation present in *Gardner*. This Court is not seeking to excuse error through a harmlessness analysis; rather, the Court complies with *Jackson*'s deference to the jury verdict. Further, the circumstances of the crime are not the lone basis for the imposition of a death sentence in Texas. Instead, the imposition of the death sentence is a confluence of a finding of guilt, a finding of future dangerousness, and a finding of no sufficient mitigating evidence. This procedure militates against an arbitrary imposition of the death penalty due to the heinous nature of a murder alone. Here, even though the Court of Criminal Appeals found that the circumstances of the crime alone support future dangerousness, Petitioner's death sentence was also based on a conviction of a special category of murder, a punishment-phase finding of intent, and a review of mitigating evidence. The language in *Gardner* is inapplicable to the current claim.

murder alone supported a finding of "future dangerousness." Opinion at 4. After reviewing the gruesome circumstances of the sexual assault and murder of Ms. Villarreal, the Court of Criminal Appeals ruled as follows:

> The extreme brutality and violence of this offense betrays a most dangerous aberration of character from which a rational juror could conclude that appellant poses a continuing threat to society. Appellant's case presents a brutal killing, which required a sustained effort to kill the victim over a prolonged period of time. The betrayal of the relationship of trust between the victim and her assailants also bespeaks a particularly cruel character, as do the repeated insults and humiliations to the person of the victim. A rational jury could find that a young man capable of inflicting such fatal humiliation and brutality upon a "friend," without any sign of remorse or regrets, is a continuing threat to society.

Opinion at 5.

The material federal question is simply whether any rational trier of fact could have found that Petitioner would commit violent acts in the future. Under the limited review of the AEDPA, this Court cannot say, in light of the circumstances of the crime, that the Court of Criminal Appeals' decision was in error. The Court of Criminal Appeals appropriately utilized the *Jackson* standard. Applying the *Jackson* standard, the Court of Criminal Appeals found that a reasonable jury could decide that Petitioner would constitute a future threat to society. Petitioner participated in the brutal rape and horrific, drawn-out murder of a young girl. The Court of Criminal Appeals could reasonably rule that "[t]he extreme brutality and violence of this offense betrays a most dangerous aberration of character from which a rational juror could conclude that appellant poses a continuing threat to society." Opinion at 5. A reasonable jury could find that Petitioner would be a future societal threat from the facts of the crime alone. The Court of Criminal Appeals' resolution of that question was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1). Petitioner's insufficiency-of-the-evidence claim is denied.

## CERTIFICATE OF APPEALABILITY

Petitioner has not requested a Certificate of Appealability ("COA"), but a district court may determine whether he is entitled to this relief *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [*sic*] to deny a COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued."). A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. *See Whitehead*, 157 F.3d at 388; *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural

grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "The nature of the penalty in a capital case is a 'proper consideration in determining whether to issue a [COA], but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.'" *Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)), *cert. denied*, 520 U.S. 1122 (1997). However, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes*, 221 F.3d at 772.

This Court has carefully considered each of Petitioner's claims. The Court finds that each issue is foreclosed by clear, binding precedent. This Court concludes that under these precedents Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As to those claims that have been dismissed on procedural grounds, this Court concludes that jurists of reason would not find it debatable whether this Court is correct in its procedural determinations. Accordingly, this Court recommends that a COA be denied *sua sponte*.

## RECOMMENDATION

"Though the penalty is great and our responsibility heavy, our duty is clear." *Rosenberg v. United States*, 346 U.S. 273, 296 (1953). For the foregoing reasons, this Court finds that there are no genuine issue of material fact and that Respondent is entitled to summary judgment. This Court recommends that Respondent's motion for summary judgment (Docket Entry No. 18) be

31

**GRANTED**, that Petitioner's motion to abate (Docket Entry No. 15) be **DENIED**, that the district court *sua sponte* **DENY** a Certificate of Appealability on all issues, and that this case be **DISMISSED**.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United States Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas this 11th day of March, 2002.

Felix Recio
UNITED STATES MAGISTRATE JUDGE