29

United States District Court
Southern District of Texas
FILED

MAR 2 1 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOSE IGNACIO MONTERRUBIO     X

                                     X

V                                    X     CAUSE NO.  B-01-112

                                     X

JANIE COCKRELL, Director        X
Texas Department of Criminal Justice
Institutional Division

PETITIONER'S OBJECTIONS TO MAGISTRATE'S REPORT

Comes now Jose Ignacio Monterrubio to file the following objections to the Magistrate's

report issued on March 14, 2002:

I.

Mr. Monterrubio is a death sentenced inmate who petition for writ of habeas corpus is

currently pending before this Court.  Judge Recio has recommended to this Court that relief be

denied.

II.

Mr. Monterrubio's objections to the Magistrate's Report have to be couched against the

total picture of his allegations.  As has been stated in the habeas corpus petition, Mr. Monterrubio

was convicted in 1994 in Cameron County Texas after a trial that lasted only two weeks.  He was

then a 17 year old boy who had never been convicted of any other criminal offense and had never

participated in any criminal activity. His trial lasted a total of two weeks, including jury selection.

He was represented by a lawyer who had been his lawyer for only two months and was paid the

long. The allegations of the writ merely set forth bare bones constitutional claims and recited no factual development or legal arguments.  Mr. Warner, according to the trial court, never asked for a hearing except on the issue of whether international law forbade the execution of someone who was 17 at the time of the offense.  Like Mr. Pena before him,,  Mr. Warner ignored a number of issues that would have assured Mr. Monterrubio of a new trial.

On the basis of this record, the State of Texas is arguing that Mr. Monterrubio's petition for writ of habeas corpus should be denied and Mr. Monterrubio put to death.

For the various reasons set forth below, that result is intolerable and not demanded by the legal authorities set forth in the Magistrate's report.

### III.

### EXHAUSTION OF STATE REMEDIES

Against various of the claims posed by Mr. Monterrubio, the Respondent has argued and the Magistrate has agreed, that these claims cannot be addressed on the merits because they were not presented to the state courts.

Mr. Monterrubio's claim is essentially two fold: (1) Texas law, contrary to the Magistrate's report, would permit a successor writ of habeas corpus and that this Court may fashion an equitable remedy that would allow a return to state court and (2), if this Court believes it cannot so fashion a remedy, then there is no remedy available and lack of exhaustion is forgiven.

The Magistrate in his report states that Texas law would not permit a successor writ of habeas corpus based on ineffective assistance of state habeas counsel.  See Report of Magistrate, p. 17-20, citing **Ex parte Graves**, ___ S.W.3d ___ (Tex.Crim.App. - Jan. 2 2002).  While true, it is not the sole remedy.  In **Ex parte Kerr**, ___ S.W.3d ___ (Tex.Crim.App. - # 35,065-04,

handed down on January 2, 2002), handed down the same day as **Graves**, the Court of Criminal

Appeals ruled that Art. 11.071, V.A.C.C.P. was premised on the notion that death sentenced

habeas applicants had one full and fair opportunity to present constitutional and jurisdictional

attacks on their conviction under the statute's procedures. The Court held that in order to be

properly considered as a writ of habeas corpus, the document had to seek relief from the

judgment of conviction. In **Ex parte Graves**, the Court ruled that competence of counsel was

not a cognizable claim for habeas corpus and that the term competent counsel referred not to

counsel's performance on the writ on question but whether, at the time of appointment, he

possessed the requisite skills, training, experience, etc. to be considered a competent attorney.

Thus, under **Ex parte Kerr**, a writ of habeas must present meaningfully a cognizable

habeas corpus issue. Under the **Graves** standard, what is not at issue is the competent

performance of state habeas counsel. The only issue is whether the writ of habeas corpus, as

presented, constitutes a meaningful attack on the petitioner's conviction and properly alleged

facts, which if true, would have entitled the habeas applicant to relief.

In **Ex parte Maldonado**, 688 S.W.2d 114 (Tex.Crim.App. - 1985) the Court of Criminal

Appeals entered the following order:

> In a postconviction collateral attack, the burden is on the
> Applicant to allege and prove facts which, if true, entitle him
> to relief. In the context of an allegation of an egregiously
> erroneous charge, one which rises to the level of having denied
> the applicant a fair and impartial trial, this requirement of
> pleading will be strictly pursued. In other words, it is not
> sufficient that the petition alleges the denial of a fair and
> impartial trial or due process of law, which are mere
> conclusions of law; neither is it adequate to allege the bare
> fact that the court's charge was somehow erroneous.
>
> Rather, the applicant must allege the reasons a given error
> in the charge, in light of the trial as a whole, so

infected the procedure that the applicant was denied a fair and impartial trial. Once alleged, the burden on the applicant to prove such a denial is heavy and cannot be carried by merely attaching a certified copy of the court's charge to the application for writ of habeas corpus, as was done here.

The application before us utterly fails to allege facts which, if true, entitle the applicant to collateral relief; the application is accordingly dismissed. This dismissal is without prejudice to applicant's right to replead and support this allegation with adequate reasoning, argument and testimonial and recorded evidence which illustrates the error so infected the trial process as to deny him a fair and impartial trial.

**Ex parte Maldonado**, 688 S.W.2d at 116.

See also **Ex parte Shook**, 59 S.W.3d 174, 176 (Tex.Crim.App. - 2001)(dissenting opinion, PJ Keller); **Ex parte McPherson**, 32 S.W.3d 860 (Tex.Crim.App. - 2000)("Applicant contends that his trial counsel was ineffective because he failed to file various pretrial motions, including a motion in limine, a motion for speedy trial, a motion to quash, and a motion for appointment of an investigator. Applicant does not allege any specific facts showing why these motions were needed in this particular case. Applicant also argues that his counsel failed to object to inadmissible evidence, but again he states only conclusions without any supporting facts. Therefore, Applicant has failed to allege facts which, if true, would entitle him to relief") **Ex parte San Migel**, 973 S.W.2d 310, 311 (Tex.Crim.App. 1998) ("It is not sufficient for a habeas petition to allege the denial of a fair and impartial trial or due process of law, which are mere conclusions of law."); **Ex parte Dutchover**, 779 S.W.2d 76, 77 (Tex.Crim.App. - 1989) ("Furthermore, applicant fails to allege facts showing in context of his particular trial the **Long** error was not harmless beyond a reasonable doubt."); **Ex parte Freeman**, 778 S.W.3d 874 (Tex.App. - Houston 1, 1989) ("Because appellant did not state facts that would entitle him to

sum of $5000.00 to represent him.[1] His lawyer secured the services of a private investigator but was allowed only $600.00 for his services, the maximum allowed by Cameron County. The jury was picked in five days and was selected, not from a special venire as required by Texas law, but from a jury pool which had already been the subject of criminal voir dire. Some of those summoned had already served on other juries one week earlier. Two members of the jury served on a jury the week before, one on a jury for the offense of murder and the other for the offense of aggravated assault. No investigation into potential punishment evidence was conducted by trial counsel. The family was simply called a few days before trial commenced and told to assemble at the court house as witnesses.

After Mr. Monterrubio was convicted, his legal situation became even worse. He was represented on appeal by Arnold Pena, who filed the appellate brief only after a show cause order was issued by the Court of Criminal Appeals that threatened Mr. Pena with contempt of court. The brief filed by Mr. Pena was only thirteen pages long and ignored vital points of error that would have assured Mr. Monterrubio a new trial.[2] Mr. Pena was paid $2500 for his work. The Court of Criminal Appeals affirmed the conviction and death sentence after finding some of the points of error raised to be inadequately briefed.

Mr. Monterrubio's legal posture became even more tenuous when state habeas counsel, Mr. Larry Warner, was appointed. Mr. Warner's state writ of habeas corpus was only three pages

---

[1]. Mr.Monterrubio was first represented by counsel retained by the family, Walter Pink of Houston, Texas who withdrew about three months before trial. The trial court then appointed a Mr. Jose Esquivel to represent Mr. Monterrubio but Mr. Esquivel withdrew one month later. In August, 1994, Mr. Afredo Padilla was appointed to represent Mr. Monterrubio. Jury selection started in October, 1994 and two weeks later, Mr. Monterrubio was sentenced to death.

[2]. Those omitted claims are set forth here as the basis of Mr. Monterrubio's claim of ineffective assistance of counsel on appeal.

relief, the trial court correctly refused to hear evidence on the issue of ineffective assistance of counsel.") **Ex parte Lopez** 745 S.W.2d 29 (Tex.Crim.App. - 1988)( dissenting opinion, PJ. Onion, ""In my opinion the applicant has not alleged and proved facts which, if true, would entitle him to relief. (citation omitted). I would dismiss the application without prejudice to applicant's right to replead and support his allegations "with adequate reasoning, argument, and testimonial and recorded evidence," which illustrates, if it does, that he was denied the effective assistance of counsel following remand.").

As Judge Recio has noted, the claims presented in the state habeas petitioner were, to be charitable, superficial. The writ made no effort to comply with the rules of pleading required by the Court of Criminal Appeals. Just as Kerr was granted leave to file a successor writ of habeas corpus, so should Mr. Monterrubio.

The other issue facing this Court is how to fashion an equitable remedy that would allow Mr. Monterrubio the opportunity to both exhaust state remedies, address the issue of procedural default and preserve his right to return to federal court. Simply dismissing the case without prejudice to refile will forever bar Mr. Monterrubio's right to seek relief in Federal Court.. At the time the undersigned counsel were appointed, the statute of limitations mandated by 28 USC Section 2254 had already expired. The recent case of **Duncan v Walker**, 533 US 167 (2001) simply precludes this remedy.

**Duncan,** however did make it clear that this Court preserves a wide range of equitable remedies to allow for exhaustion. As Justice Stevens noted in his concurring opinion in **Walker**, "in our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies."

> Indeed, there is every reason to do so when AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims, See 28 U.S.C. Section 2254(b)(2) (1994 ed. Supp. V) and when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of AEDPA's 1-year limitations period.

See also concurring opinion, J. Souter, "nothing bars a district court from retaining jurisdiction pending complete exhaustion of state remedies, and that a claim for equitable tolling could present a serious issue on facts different from those before us." 121 S.Ct. At 2129.

Retaining jurisdiction, however, is impossible in Texas. Texas courts will not recognize a petition for writ of habeas corpus even if the cause is abated so long as the federal court retains jurisdiction. See **Ex parte Skinner**, unpublished opinion, cause no. 20,203-4, handed down on October 10, 2001. This Court, to utilize the broad equitable powers outlined in **Duncan**, must enter an order allowing for equitable tolling until the date of the dismissal.

In a pre-AEDPA case, **Guizar v. Estelle**, 843 F.2d 371 (9th Cir. 1988), the Ninth Circuit decided that a petitioner that had presented a mixed petitioner must be given the opportunity to return his unexhausted claims to state court without prejudice to his pending federal habeas petition. The result was achieved by the Ninth Circuit ordering the District to Court to relate the petitioner's later exhausted petition to relate back to his initial filing.

After the effective date of the AEDPA, the District Court for the Northern District of California, applied **Guizar** to a situation where petitioner filed an initial mixed petition requesting habeas corpus relief. **Anthony v. Cambra**, No. C 97-2232 FMS (PR), 1998 U.S. Dist. LEXIS 3790, (N. Dist. Ca. February 18, 1998). The District Court in *Anthony* held that the petitioner's mixed petition must be dismissed but the petitioner must be allowed to return to District Court with his exhausted claims. The District Court reasoned that **Rose v. Lundy** 455 U.S. 509 (1982) required the dismissal of all mixed petitions while **Guizar** required the District

Court to allow the petitioner to return to District Court when all issues in his petition were exhausted. Further, **Guizar** obliged the District Court to allow the petitioner to return without facing an AEDPA time bar. The District Court had to relate the exhausted petition back to the initial filing.

In **Stewart v. Martinez-Villareal**, 523 U.S. 637 (1998), the capital habeas petitioner filed a federal habeas petition in March 1993.[3] The district court dismissed his claim that he was incompetent to be executed under **Ford v. Wainwright**, 477 U.S. 399 (1986), as premature (because the petitioner had no pending execution date), but granted relief on other grounds. The Ninth Circuit reversed the grant of relief "but explained that its instruction to enter judgment denying the petition was not intended to affect any later litigation of the **Ford** claim." 118 S.Ct. at 1620. Thereafter, an execution date was set; the petitioner exhausted state remedies on his **Ford** claim; and he returned to federal court. By this time, however, the AEDPA had been enacted. The district court treated the refiling of the **Ford** claim as the filing of a "second or successive" habeas petition, applied AEDPA, and dismissed the petition because AEDPA forbids the filing of successive petitions without prior leave of a Court of Appeals. The Ninth Circuit disagreed and remanded to the District court on the ground that § 2244(b) as amended by AEDPA does not apply to a petition raising only a **Ford** claim and, thus, Martinez-Villareal did not need the Court of Appeals' permission to proceed.

The Supreme Court in turn concluded that the Ninth Circuit's decision was right, not because § 2244(b) does not in principle apply to **Ford** claims, but because under the

---

[3]This petition was actually the fourth federal petition filed by Martinez-Villareal, but the prior petitions had all been dismissed for lack of exhaustion. Accordingly, the March, 1993 petition was still considered the first petition. See **Rose v. Lundy**, 455 U.S. 509, 520-522 (1982).

circumstances of the **Martinez-Villareal** case the petition presenting his **Ford** claim was not a "second or successive application" for a writ of habeas corpus within § 2244(b)  The Court's analysis of why the **Ford** petition was not a new and thus successive application teaches much about the relationship between a petition that is dismissed without an adjudication on the merits and a subsequent petition re-raising the same claims.

The Court analogized the dismissal of a claim because it is premature to the dismissal of a claim because it has not been exhausted.  118 S.Ct. at 1622.  "[I]n both situations, the habeas petitioner does not receive an adjudication of his claim."  *Id.*  In both situations, the Court found, the petitioner is entitled to return to federal court, following the removal of the procedural reason that prompted dismissal, and obtain a ruling on the merits of his or her claim.  The reason for this result is that **the second petition is not a separate, distinct habeas application, but is a continuation of the first**.  As the Court explained,

> This may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, but **this does not mean that there were two separate applications**, the second of which was necessarily subject to § 2244(b). **There was only one application for habeas relief**, and the District Court ruled (or should have ruled) on each claim at the time it became ripe.  Respondent was entitled to an adjudication of all of the claims presented in his earlier, undoubtedly reviewable, application for federal habeas relief.  (118 S.Ct. at 1621 (emphasis supplied).)

The same argument applies to Mr. Monterrubio's case. A second habeas petition, filed after exhaustion, addresses the same issues filed in the first habeas application. The "one application for relief" should necessarily be the initial one raising the claim as to which adjudication was postponed until state court action ripens it.

Finally, equitable tolling can apply to incompetent state habeas counsel.  It is by now well accepted in this Circuit that the limitations period set out in §2244 is not jurisdictional and is

subject to equitable tolling in "rare and exceptional circumstances," when "strict application of the statute of limitations would be inequitable." **Davis v. Johnson**, 158 F.3d 806, 807, 810-811 (5th Cir. 1998) (citations omitted).[4]   A "'garden variety claim of excusable neglect does not support equitable tolling'" which "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." **Coleman v. Johnson**, 184 F.3d 398, 1999 U.S. App. LEXIS 18466 at *11 (5th Cir. 1999) (citations omitted).  Each case must be examined on its own individual facts. **Fisher v. Johnson**, 174 F.3d 710, 713 (5th Cir. 1999).

Capital inmates seeking to pursue post-conviction relief in the Texas state courts are entitled to the appointment of "competent counsel." *See* TEX. CODE CRIM. PROC. Art. 11.071 Sec. 2(d).  The difficulty and complexity of habeas corpus law and procedure are widely recognized.  See **McFarland v. Scott**, 114 S.Ct. 2568, 2571-72 (1994).[5]   These inherent rigors have only increased with the passage of extensive revisions to the state and federal laws governing habeas corpus appeals, which include the implementation of entirely new state and federal filing deadlines.

While incompetence of state habeas counsel may not excuse a procedural default, as the Magistrate noted, it can provide justification for equitable tolling.  Here, none of this discussion

---

4 See also **Miller v. New Jersey State Dep't of Corrections**, 145 F.3d 616, 618 (3d Cir. 1998); **Miller v. Marr**, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525 U.S. 891 (1998); **Calderon v. United States Dist. Court**, 128 F.3d 1283, 1289 (9th Cir. 1997), cert. denied, 139 L. Ed. 2d 884, 118 S. Ct. 899 (1998).

5 In the federal system, this recognition resulted in the standards for appointed counsel set out in 21 U.S.C. §848(q)(9), and guidelines which encourage the appointment of two attorneys in all federal capital habeas corpus appeals. *See, Guide to Judiciary Policies and Procedures: Representation in Federal Capital Cases and in Death Penalty Federal Habeas Corpus Proceedings, Chapter VI, Appointment of Counsel in Capital Cases §6.01(A).*

would have been necessary had state habeas counsel filed a proper writ of habeas corpus under the standards set forth above. The "superficial" pleading filed by state counsel was, in fact, so bare boned as to constitute no pleading at all. Had counsel even minimally investigated this case, at least one of the habeas claims, the Sixth Amendment claim relating to the admission of the confession of the codefendant, Sixto Monterrubio, would clearly have "jumped" off the pages as a viable, even winning habeas claim. In short, had even minimal habeas corpus work been done in state court, Mr. Monterrubio would have gotten a new trial.

Other District Courts have applied the doctrine of equitable tolling to claims of incompetent state habeas counsel when that same counsel failed to timely file with the federal courts a notice that the habeas petitioner required appointed counsel: Judge Cummings in **Joe Lee Guy v. Gary Johnson**, in the Northern District of Texas and Judge Thad Heartfield in **Kenneth Bruce v. Gary Johnson**, in the Eastern District of Texas. . Equitable tolling is warranted.  See **Coleman**, 184 F.3d 398, (5th Cir. 1999).  Cf. **Davis v. Johnson**, 158 F.3d 806 (5th Cir. 1998) (affirming district court's finding that petition was time-barred but finding that reasonable juries might differ with regard to equitable tolling based on "extraordinary circumstances" present in the case).

As noted elsewhere, Texas capital inmates seeking to pursue post-conviction relief in the state courts are entitled to the appointment of "competent counsel." *See* TEX. CODE CRIM. PROC. Art. 11.071 Sec. 2(d).  Given the state law guarantee, Mr. Monterrubio was entitled to rely on minimally competent representation.  Nor can he be expected to protect his own rights when he has been assured by the State and his counsel that he will do so.  In these circumstances, Mr. Monterrubio should not bear the drastic consequences of his counsel's errors, when this Court can enter an order that allows him to return to state court and to have the statute of limitations

tolled during that return.

Mr. Monterrubio has done nothing to contribute to the untenable position he now finds himself. This is not a case where Mr. Monterrubio "failed to exercise due diligence in preserving his legal rights." **Irwin v. Department of Veterans Affairs,** 498 U.S. 89, 96 (1990), or where he has "sle[pt] on his rights." **Covey v. Arkansas River (citation omitted) .,** 865 F.2d 660, 662 (5th Cir. 1989).[6] Nor is it a case where Petitioner has engaged in dilatory tactics by manipulating or dismissing appointed counsel. **Cantu-Tzin v. Johnson,** 162 F.3d 295, 297 (5th Cir 1998). Mr. Monterrubio's hands are clean.

Indeed, in light of the particular combination of events and circumstances presented, the strict application of the limitations period contained in 28 U.S.C. 2244(d)(1) to Mr. Monterrubio's case would raise serious questions about the constitutionality of the limitation period as applied. Cf. **Triestman v. United States,** 124 F.3d 361, 373-380 (2d. Cir. 1997); **Miller v. Marr,** 141 F.3d 976, 978 (10th Cir. 1998), cert. denied 525 U.S. 891 (1998). "A system or procedure that deprives persons of their claims in a random manner. . . necessarily present an unjustifiably high risk that meritorious claims will be terminated." **Logan v. Zimmerman Bruch (citation omitted) .,** 455 U.S. 422, 434-435 (1982) (holding that state violated due process when it deprived wrongful discharge claimant or forum owing to state agency's unexplained failure to convene hearing within statutory deadline.")

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, but we draw on general principles to guide when equitable tolling is appropriate. We must be cautious not to apply the statute of limitations too harshly. 'Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the

---

[6] "We look to our non-AEDPA cases for further elucidation of when to toll." *Fisher*, 174 F.3d at 713 (5th Cir. 1999).

petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty.'"

**Fisher v. Johnson**, 174 F.3d 710, 713 (5th Cir. 1999), citing **Lonchar v. Thomas**, 517 U.S. 314, 324 (1996). "At bottom, this court is not disposed to apply mechanically the limitations period when review is so glaringly warranted. Such a result would belie the meaning of 'equitable tolling.'" **Helton v. Singletary**, 1999 U.S. Dist. LEXIS 20349 (S.D. Fla. 1999) (applying Eleventh Circuit's "extraordinary circumstances" language to find that equitable tolling of AEDPA one-year limitation period warranted where petitioner relied on (mis)advice of state collateral counsel regarding the time period for filing, and facts presented in petition were particularly compelling.

An equitable tolling order will not delay the litigation of the case  but will only ensure that Mr. Henry has a chance to have his claims presented by competent counsel and heard by this Court.  Thus, the exercise of this Court's discretion through the entry of the tolling order requested would "help[] safeguard habeas while still fulfilling Congress's express desire to accelerate the process." **Fisher v. Johnson**, 174 F.3d 710, 713 (1999).   See also **Loeber v. Bay Tankers, Inc.**, 924 F.2d 1340, 1343 (5th Cir. 1991) (tolling warranted where it does not defeat purpose of encouraging diligence and injustice to plaintiff would otherwise result).[7]

Mr. Monterrubio requests that this Court dismiss this petition without prejudice to allow him to return to state court in order to exhaust those remedies and to enter an order equitably tolling the statute of limitations from the date of the dismissal of his original petition for writ of

---

[7].  The relief requested is authorized.  Federal courts, as part of their inherent power to control their dockets have the discretion to formulate appropriate remedies which will ensure that the running of statutes of limitations will not extinguish a litigant's federal claims. *See, e.g.*, *Spina v. Aaron*, 821 F.2d 1126, 1129 (5th Cir. 1987). *See also* Magistrate Judge's Report and Recommendation in the matter of *Colella v. Johnson*, Civ. Action No. B-98-121, United States District Court for the Southern District of Texas, Brownsville Div. Feb 29, 2000. (dismissing federal habeas petition without prejudice and equitably tolling federal habeas limitations period).

habeas corpus to the date his application for a successor writ of habeas corpus, under Art. 11.071, Section 5, V.A.C.C.P. is filed.

IV.

Procedural Default.

If this Court grants Mr. Monterrubio's request to dismiss and enter an equitable tolling order, then the issue of procedural default will also be addressed.

If this Court does not do so, then Mr. Monterrubio continues to urge his arguments against procedural default set forth in his summary judgment response. Mr. Monterrubio concedes that the 5th Circuit has ruled against this argument, as Judge Recio noted in his Report. See pp. 22-26, citing **Martinez v Johnson**, 255 F.3d 229, 245-46. (5th Circ. 2001). Nevertheless, a stronger case for reconsidering that ban against ineffective state habeas counsel claims, cannot be imagined. As noted above, Petitioner's trial presented one of the strongest claims for habeas relief imaginable. Trial counsel adequately preserved the Sixth Amendment issue on the admissibility of Sixto Monterrubio's confession. [8] The Supreme Court has expressly held that the use of a codefendant's post arrest confession which shifts blame to the defendant expressly violates the Sixth Amendment. **Lilly v Virginia**, 527 US 116 (1999).

V.

As to the rest of Mr. Monterrubio's claims, he would urge the same legal issues here as he raised in his Summary Judgment Response.

---

[8]. Sixto Monterrubio was the Petitioner's codefendant; Sixto's confession was admitted to establish the corpus delicti of the offense of capital murder. Though Petitioner confessed, under Texas state law, a defendant's confession by itself, cannot establish the corpus delicti of the offense, in this case both the capital murder and the aggravated sexual assault. This use of the confession was noted by the Court of Criminal Appeals when it affirmed Petitioner's conviction. Thus, the confession of use to prove a substantive element of the offense.

Respectfully submitted,

Michael B. Charlton
1744 Norfolk
Houston, Texas 77098
(713) 572 2333
(713) 572 2483 (fax)
State Bar of Texas 04144800
COUNSEL FOR JOSE IGNACIO MONTERRUBIO

_____
Elisa Vasquez
613 19th Street
Galveston, Texas 77550
(409) 763 2131
(409) 763 4104
State Bar of Texas 20502100
COUNSEL FOR JOSE IGNACIO MONTERRUBIO

## CERTIFICATE OF SERVICE

This is to certify that a copy of these Objections to the Magistrate's Report was served on

opposing counsel, Tina Dettmer, of the Texas State Attorney General's Office, P.O. Box 12548,

Austin, Texas 78711 by mailing a copy of same on March 20, 2002.

Michael B. Charlton